.Diiake, Oh. J.,
delivered the opinion of the court:
The claimant was collector of internal revenue for the second district of Arkansas. For the fiscal year ending June 30,1867, his salary was fixed by the Treasury Department at $4,000. In the latter part of July, or in August, 1867, in an interview between him and the Commissioner of Internal Iievenue, the matter of his salary for the then current fiscal year, to end on the 30th June, 1868, became the subject of conversation between them, when the claimant refused to retain the office unless he should receive the same salary as had been allowed him for the previous fiscal year.
On the 22d day of November, 1867, the Commissioner of Internal Eevenue recommended to the Secretary of 4be Treasury that $14,650 should be allowed claimant for the fiscal year ending June 30,1868, in lieu of salary and commissions, the items *368 of whicli allowance, estimated from, vouchers of claimant for past time, were thus stated in the letter of the Commissioner:
“For pay of deputies, $7,500; clerks, $2,200 . $9, 700
Kent, $300; fuel and lights, $150. 450
Miscellaneous, as advertising, &c. 500
Proper personal salary for collector. 4, 000
“ Making a total of. ■. 14, 650
“ Which amount,” says the Commissioner in his letter to the Secretary, “I respectfully recommend be.allowed for the current fiscal year, in lieu of salary and commissions, and paid in proper monthly proportions upon the rendition of estimates, provided that, in the adjustment of his account at the close of the year, the personal salary of the collector shall not be allowed to exceed $4,000 for the year, exclusive of actual and necessary-expenditures, as shown by satisfactory vouchers.”
On the 4th of December, 1867, the Secretary of the Treasury made in writing the following order:
“I hereby grant to William J. Patton, collector of internal revenue for the second district of Arkansas, a special allowance for the current fiscal year, in lieu of the salary and commissions provided for by law, of $14,650, to be paid in proper monthly proportions on the rendition of estimates; provided that in the adjustment of his account at the close of the year the personal compensation of the collector shall not be allowed to exceed •$4,000, exclusive of actual and necessary expenditures, for which proper vouchers shall be furnished the accounting officers.”
Of the sum thus granted, one-half, $7,325, was allowed in his •accounts for the six months from July 1,1867, to.December 31, 1867, and paid to claimant.
In his account for the quarter ending March 31,1868, he was allowed as “ salary for said period in gross — special alloivance, (see Secretary’s letter December 4, 1867,) $1,000,” and his account was adjusted on that basis by the Treasury Department. In his account for the quarter ending June 30,1868, he was allowed, as “ Salary for said period in gross,, (special allow-’ anee $4,000 per annum,) $1,000,” and his account was adjusted on that basis by the Treasury Department.
*369 On tbe 8th of January, 1869, claimant addressed a letter to the Commissioner, claiming’ that, as shown by the vouchers he had rendered, he had actually paid out for administering the office $14,887.77, being $237.77 more than he had received under the letter of the Secretary of December 4,1867; whereby he was left without any personal compensation whatever for the fiscal year ending June 30,1868; and he ashed the Commissioner to recommend that the Secretary grant him an additional allowance of $4,237.77, to make his personal compensation $4,000 for the year.
The Commissioner thereupon prepared and submitted to the Secretary a statement of the expenses paid by claimant in administering his office during that year, showing that, as claimed by the latter, the expenses actually paid exceeded by $237.77 the whole amount allowed for expenses and salary by the Secretary’s letter of December 4, 1867 ] and the Commissioner recommended the allowance of the expenses and the salary of claimant 5 but, instead of placing the salary at $4,000, he stated it at $3,000, making the total special allowance recommended $3,237.77.
The Secretary, on the 25th of February, 1869, granted claimant the special allowance recommended, in the terms of the following order:
‘ ‘ In accordance with the recommendation of the Commissioner of Internal Eevenue, herein contained, I hereby grant to Wo J. Patton, collector of internal revenue of the second district of Arkansas, to cover expense attending the administration of his office for the fiscal year ending June 30,1868, the special allowance of the sum of $3,237.77: Provided-, That in the adjustment of his accounts for said year, vouchers covering such allowance satisfactory to the accounting officers shall be furnished.”
The Fifth Auditor of the Treasury referred the account to the First Comptroller, with his “ opinion, that, in view of the fact that this collector has had his accounts for the period named adjusted under a former allowance, giving him a salary of $4,000 per annum, it is not competent for the Secretary of the Treasury to change it now.”
The First Comptroller returned the account to the Fifth Auditor, “ with the opinion, that, inasmuch as the Secretary’s present order increased the gross allowance, he might, in making it, attach such conditions as to him should seem proper.”
*370 On the 13th of March, 18C9, the claimant appealed, by letter, to the Commissioner, that, as his salary had been allowed and paid him, the allowance of February 25, 1869, should be increased $1,000, so as to prevent the necessity of his paying-back into the Treasury that amount of the salary paid him for the year. The Commissioner declined this request, and expressed the “ opinion, that the allowance of $3,237.77 granted by the Secretary of the Treasury beiug an increase of the allowance granted December 4,1867, it was competent for the Secretary to impose such conditions as to him would seem proper.”
Afterward the First Comptroller of the Treasury stated the account of claimant on the basis of the allowance of $3,237.77, and the claimant receipted from himself as collector, to himself as collector and disbursing agent, for the amount, and was credited with the income fax on the $1,000 taken off his salary; and the matter was thus stated by the First Comptroller in his statement of account, dated March 29,1869, to wit;
“ The collector’s personal salary for the fiscal year ending June 30,1868, having been reduced by the Secretary of the Treasury’s special allowance, dated February 25, 1869, from $4,000 to $3,000, the tax on $1,000 is herein credited back to the collector.”
The claimant’s suit is to recover the $1,000 which was deducted from his salary.
The first question arising upon these facts is that of jurisdiction. It is contended, on behalf of the defendants, that as the case involves a construction of an internal revenue act, this court cannot take jurisdiction of it; and we are referred to the case of Nicoll v. United States (7 Wallace, 122) as decisive on this point. We do not so regard it. That was a.case arising in the course of the collection of the revenue, and was to recover back duties paid, without protest, on imported goods. The Supreme Court held that this court had no jurisdiction of such an action, because the claimants, by not protesting, had lost all right to ask for repayment, and no promise by the Government to pay back the duties could be implied against the positive demand of a statute.
That is not a case like this. The question there was between the Government and an importer who had paid duties; the *371 question here is between the Government and one of its officers, as to hia salary.
All questions of salary are questions of contract. Whether the salary be fixed by law, or by the order of a Department under authority of law, the Government contracts to pay the officer his salary, and, failing to do so, is liable to be sued therefor, whether the case arise under a revenue act or any other.
We hold, therefore, that this court lias jurisdiction of this ease.
And what is the case f Simply one. of the induction by a superior officer of the salary of an inferior, after it has been adjusted and paid according to law ; and the consequent compulsion of the repayment into the Treasury of $1,000 by the inferior.
The twenty-fifth section of the internal revenue act of June 1864, (13 Stat. L., 223,) after prescribing the compensation of collectors, provides “ that the Secretary of the Treasury be authorized to make such further allowances, from time to time, as may he reasonable in cases in which, from the territorial extent of the district, or from the amount of internal duties collected, or from other circumstances, it may seem just to make such allowance.”
There can be no doubt that under this provision the whole matter of “ further allowance ” rests wholly in the discretion of the Secretary of the Treasury. Bat when he has, in the exercise of that discretion, granted a “ farther allowance,” and the same has been paid to the officer, he has no more legal right to exact a return of any portion of it than he would have if the amount had been fixed by law and paid.
The question, then, is presented, whether the Secretary of the Treasury did, in fact, grant a u further allowance” to the claimant, in such terms as that his personal salary, aside from the expenses of his office, was definitely fixed at $4,000 for the fiscal year ending June 30,1868. If he did, then the reduction of it after the salary was paid, was an unauthorized act.
The answer to this question depends upon the construction of the Commissioner’s letter of November 22, 1867, and the Secretary’s letter or order of December 4,1867.
For the defendants it is contended that those letters fixed only the maximum of the salary, and that it was in the power *372 of tbe Secretary to allow as muck less as he might deem just. It is also claimed that the contract was for a gross sum of $14,650, and that the intention was, that whatever of that sum was not needed for expenses, should go to claimant as his salary, provided it did not exceed $4,000.
These do not seem to us to be the true views of the case.
Let it be observed that the portion of the $14,650 allowed for expenses, viz, $10,650, was an estimate for the future, based on the past expenses of the office. It might or might not prove correct for the current year. It might turn out to be too much; and it wasj in our opinion, to guard, in that event, against any claim on the part of the officer to any portion of the money allowed for expenses, that the Commissioner, after estimating in unqualified terms for the “ proper personal salary for collector, $4,000/’ accompanied the estimate with a proviso. which was afterward adopted by the Secretary, “ that in the adjustment of his account at the close of the year, the personal salary of the collector shall not be allowed to exceed $4,000 for the year, exclusive of actual and necessary expenditures, as shown by satisfactory vouchers.”
This was not a- reservation of a right in the .Department to reduce the allowance for salary, but simply a provision against its exceeding’ the estimated amount, $4,000. That this was the view of the Treasury Department is clear from its allowance and payment of his salary at the rate of $4,000 for the entire year; and it was not until more than six months ■after the expiration of the year when he showed that the expenses of his office had exceeded the whole sum of $14,650, leaving Mm nothing for personal compensation, and asked for an additional allowance, that the officers of the Treasury conceived the idea of cutting off $1,000 from Ms already allowed and paid salary, and thereby compelling him to pay out of his own pocket that much of the expenses which his vouchers showed to have been paid by him, which the Government officers recognized as lawful, and which, therefore, were justly chargeable to the Government and not to him.
But it is insisted here, as it was claimed by the First Comptroller and the Commissioner of Internal Revenue, that, as the order of February 25,1869, allowing the further sum of $3,237.77 increased the gross allowance, the Secretary of the Treasury *373 might, in making’ it, u attach such conditions as to him should' seem proper.”
As a general proposition, this may be true; but we do not clearly see its application. It does not seem to proceed upon a proper understanding of the meaning of the word condition, In contracts, a condition is a clause which has for its object to suspend, rescind, or modify the principal obligation. It must; be express, that is, created by express words, or implied, that is, such as the law supposes the parties to have had in mind at the time the transaction was entered into, though no condition was expressed. A common mode of stating a condition in a contract is under a proviso.
The order of February 25, 1869, cantains an express condition in the shape of a, proviso, in these words: “Provided, That in the adjustment of his accounts for said year, vouchers covering such allowance, satisfactory to the accounting officers, shall be furnished.”
Is this the condition to which the reference is made ? If so, there is no doubt of the full right of the Secretary to impose it ; and we do not understand that its fulfillment by the claimant is questioned. Yery plainly, however, it is not that to which reference is made; but it is claimed that the Secretary’s order embodied a condition, that, because of the increased allowance, the claimant’s salary should be docked $1,000; and the whole $4,000 having been already paid him, he should pay that thousand dollars back into the Treasury. Manifestly, no such condition is there expressed. Will the law suppose that the parties had it in mind at the time, though not expressed ? We see no room for so violent a supposition, but the-contrary. The whole facts indicate that no such condition was. in the minds of either the Secretary or the claimant when the Secretary’s order was made. There is nothing, then, in the defendants’ claim of conditions attached to the allowance granted on the 25th of February, 1869.
What, then, was the essential character of the act of the Secretary of the Treasury of February 25, 1869, so far as the claimant’s salary was concerned? It was expressed by the First Comptroller, in the extract above given from an account stated by him with the claimant, as a reduction of the salary;, and that though the salary had already been allowed and paid *374 to claimant; As such, to characterize it mildly, it was simply arbitrary and without authority of law.
But it is urged for the defendants that the claimant’s acceptance of the last allowance fixed the salary at $3,000. If he had stood on an equal footing with the Treasury Department, free to accept or refuse as he might see proper, and not liable to severe resorts by the Government against him in case of his non-acceptance, there might be some show of reason in this j but such was far from being the case. From the date of the order of February 25,1869, he stood charged on the books of the Treasury Department with that thousand dollars, and, if he did not pay it, he was liable to removal from office, to the summary seizure of his property under a warrant of distress, and to indictment as a defaulter. That, under such circumstances, he accepted the allowance, is not to be construed as an estoppel of his right to appeal to this court for redress of a wrong, which he had no power to resist, which no conduct of his had invoked, and against which otherwise there was no relief.
Judgment will be entered in favor of the claimant for $1,000.