Drake, Ch. J.,
delivered the opinion of the court:
Upon the foregoing facts the question arises whether this court has jurisdiction of this action.
The claimants rely, as sustaining our jurisdiction of their claim,.upon the following cases decided by this court: Patton’s Case, (7 C. Cls. R., 362;) Daily’s Case, (id., 383;) Broulatour’s Case, (id., 555;) and Kaufman’s Case, (11 id., 659.) We do not regard those cases as having that effect. All of them arose under the revenue laws, but they were of an entirely different character from this.
In Patton’s Case, the question was as to the authority of the Secretary of the Treasury to exact from a collector of internal reven ue the return into the Treasury of a part of his salary which had been fixed by the Secretary, and allowed to the collector in his accounts with the Treasury Department, and which the -Secretary, after the earning of the salary by the collector, attempted to reduce; and we held that the matter was one of contract, and not one of the administration of the revenue laws, and therefore within our jurisdiction.
In Daily’s Case, the claimant sued for a commission directly promised by statute upon purchases of internal-revenue stamps; and our jurisdiction of such a demand was upheld.
In Broulatour’s Case, the claim was for a sum of money deposited with a collector of customs to cover the amount of duty which, on calculation, might by the collector be found due on *476 an invoice of imported merchandise. When the calculation came to be made by that officer it was found that the deposit exceeded the amount of the duty, and we held that we had jurisdiction of an action to recover back the excess.
In Kaufman’s Case, the.aetion was for the amount of an allowance made by the Commissioner of Internal Revenue in favor of the claimant as a refunding to him on an internal-revenue special-tax stamp returned. The allowance was certified to the Comptroller of the Treasury, and nothing remained to be done but the passing of the claim by the accounting-officers of the Department, and the issuing of a warrant for payment. As the action was not brought for the determination of any question which was within the jurisdiction of the Commissioner, and did not seek to have the decision of that officer overruled, but to enforce a decision lawfully made by him, whereby the right of the claimant was, in law, adjudged and determined, the jurisdiction of the court was sustained.
On the other hand, where the right of a claimant was, by law, required to be determined by some executive officer, and it had either been determined against him or was still undetermined, we have held that we have no jurisdiction to overrule the decision already made or to determine the matter here, and, upon the basis of our determination, render a judgment against the Government. (The Portland Company’s Case, 5 C. Cls. R., 441; Dougherty’s Case, 6 id., 90; Turner’s Case, 9 id., 367.)
From this statement of the decisions of this court it will be observed that the question has not arisen here whether the court may, under section 1059 of the Revised Statutes, entertain jurisdiction.of a claim arising under the revenue laws, as one “founded upon a law of Congress or upon a regulation of an Executive Department,” where the law provides the claimant with no means of redress, either through the action of an executive officer or the jurisdiction of some other court; and upon that question we express no opinion. But, as a condensed summary of what has been held in those decisions, we state the following points:
1. Where the Secretary of the Treasury, as in Broulatour’s Case, transmits hither a claim which arose under the revenue laws, accompanied by a statement of the facts in regard thereto, and submits to us the questions of law arising on the facts, the court may take Jurisdiction of the claim.
*477 2. Where the law declares that, upon a party’s doing some defined act, he shall be entitled to money from the Government, and his right thereto is not made to depend upon the decision or action of some executive officer, but is complete upon the doing of the act, the claim for the money may be sued upon in this court.
3. Where, under the law, the right of a party to money from the Government is made to depend upon some such decision •or action, and the same has been rendered or taken in the party’s favor, the claim for the money may be prosecuted to judgment in this court.
4. Where, under the law, such right is made to depend upon such decision or action, and the same has been rendered or taken against the party, this court has no jurisdiction to enforce the supposed right, because the law provides another tribunal for the settlement of the question of right, and there is no power here to review and reverse the action of that tribunal.
5. Where, under the law, such right is made to depend upon such decision or action, and none has been made or taken -in the premises, the matter is still in fieri in the Executive Department, and the supposed right, not having been fixed in the legally-prescribed way, cannot be enforced through the jurisdiction of this court.
Clearly, the present case falls under the last conclusion thus . stated.
The claim is for a drawback, alleged to be due the claimant under the fourth section of the Aet August 5,1861, to provide increased revenue from imports, to pay interest on the public debt, and for other purposes,” (12 Stat. L., 292,) which provides as follows:
“ That from and after the passage of this act there shall be allowed, on all articles wholly manufactured of materials imported on which duties have been paid, when exported, a drawback equal in amount to the duty paid on such materials and' no more, to be ascertained under such regulations as shall be prescribed by the Secretary of the Treasury: Provided, That ten per centum on the amount of all drawbacks so allowed shall be retained for the use of the United States by the collectors paying such drawbacks respectively.”
Manifestly under this section there could be no fixed right to any specific sum of money as drawback until the amount of the *478 drawback should be ascertained under regulations prescribed by the Secretary of the Treasury.
On the 22d of January, 1862, that officer prescribed regulations under that section, the parts of which bearing on this case are as follows:
1. “To entitle the exporter to such allowance of drawback, he must, at least six hours previous to the putting or lading any of the articles intended to be exported by him for benefit of drawback on board of any vessel or other conveyance for exportation, lodge with the collector of customs for the district from which such exportation is to be made, an entry setting forth his intention to export such articles, and the marks, numbers, and a particular description of the same, with their quantity and value, and designating the manufacturer thereof, the place where deposited, the name of the vessel or other conveyance in or by which, and the port or place to which the same is intended to be exported, and also describing in such entry the material or materials severally from which he claims the articles to have been manufactured, designating when, where, whence, by whom, and in what vessel or other conveyance the same was or were imported, and specifying the quantity and value thereof used in the manufacture. This entry shall, upon presentation, be verified by the oath or affirmation of the proprietor and the foreman of the manufactory in which such articles were made.
2. “ On the receipt of this entry, in duplicate, thus verified, the collector shall examine, or where there is a surveyor at his port shall direct that officer to examine, by himself or deputy, the articles described in the entry, and ascertain whether the same be as stated, and, if so found, mark with some appropriate device or appendage each article or package thereof.
3. “ On the receipt of the surveyor’s return, the collector, if the articles be found to be entitled to drawback, shall transmit to the surveyor the entry lodged with him by the exporter, with direction to have the weight, gauge, measure, or count, as the case may require, of the said articles ascertained and returned, and the same laden for exportation.
4. “ The service of superintending the lading for exportation must in all cases when practicable be performed by the officer who made the original inspection, who will be careful to examine the articles in order to identify them, and upon the *479 lading thereof being completed will make return,” in a prescribed form.
5. “ These proceedings having been had, and the entry with the certificate of lading thereon returned to the collector, the exporter shall, before the clearance of the vessel in which the-exportation is made, take and subscribe an oath,” in a form prescribed.
6. “The exporter shall also give bond to the United States, with two sureties, one of whom shall be the master or other person having charge or command of the vessel or other conveyance in or by which the said manufactured articles are intended to be exported, in a sum equal to the full value of said articles, said bond to be executed before the vessel is cleared at the custom-house, and to be ” in a form prescribed.
7. “ The manufactured articles having been duly laden for exportation, the exporter having taken the prescribed oath and executed the required bond, and the vessel having been duly cleared, the collector, in conjunction with the naval officer, where there is one, shall compute the amount of drawback, to be paid in strict accordance with the results of the investigations made, and at the rates in that behalf hereinafter established or to be established on special application to the Secretary of the Treasury of the United States, and shall grant to the exporter a certificate for the net amount of such drawback in the form annexed, which certificate shall be made payable to such exporter or his order in thirty days from the date of the clearance of the vessel in which the exportation was made.
8. “ These certificates * * * will be paid at maturity by the collector who granted the same, to whom they will be surrendered on payment.”
These regulations show that much was required t<5 be done by the exporter and the officers of the customs before the former could become entitled to be paid a drawback. Not until after all the preliminary steps and acts had been taken and done in accordance with those regulations could the claimants have acquired alegal right to demand and receive the collectors’ “ certificate for the net amount of such drawback;” and without that certificate their right to the drawback was but inchoate, aiid incapable of completion in any , other way than those regulations prescribe.
The claimants, however, insist that as they -took the initial *480 step toward establishing their right in the premises, and the collector, acting under instructions from the Secretary of the Treasury, refused to take or allow to be taken any step whatever under those regulations, they are not thereby cut off from recovering here ajudgment for the amount to which they would have been entitled if all the required steps had been taken. This position is not tenable, for the following reasons:
1. The drawback was a mere gratuity proffered by the Government, imposing no legal obligation upon the Government until the exporter’s right thereunto should be ascertained and established in the manner prescribed by law.
2. The ascertainment and establishment of that right, was intrusted by law and regulations to certain executive officers, and not to the judiciary.
3. If those officers, for whatever reason, have refused or failed to act in the premises, that confers no authority upon this court to exercise functions delegated to them, and declare a right in the claimants which the law and regulations require to be declared by those officers in a prescribed way, and do not authorize to be declared by any other officers, or in any other w&y. j
For want of jurisdiction in this court the petition must be dismissed.
Peck, J., was of the opinion that the court had jurisdiction.