Weldon, J.,
delivered the opinion of the court:
The plaintiff as surviving partner of the firm of Charles Wright Durant and Charles Wright Durant, jr., seeks to recover from the defendants certain alleged drawbacks due said firm upon the shipment of sugar in the year 1875 .from the city of New York to the Dominion of Canada. ' The facts show that during that year the firm were engaged in the business of refining sugar in the city of New York, and during said time shipped, from the 9th day of November to the 25th day of November, inclusive, 3,500 hogsheads of refined sugar, amounting in the aggregate to 1,080,326 pounds. The sugar exported was wholly manufactured by said firm from imported sugar upon which the new rate of duty had been paid. The drawback was paid on the 1,080,326 pounds, at the rate of 3 cents per pound less 1 per cent retention. It is insisted that a payment of 3| cents per pound should have been made, and that upon a proper accounting the defendants owe the claimant the sum of $8,021.38. If the contention of the claimant be true in law, that is the amount to which he is entitled.
The liability of the defendants turns upon the questions, first, whether the court has jurisdiction of the claim, and, second, what was the rate of drawback in force at the time the shipments were made as to the kind and quality of sugar exported by the claimant.
Covering the period of the exportation, the following are the orders, regulations, and action of the Treasury Department:
*364 “Washington, March 27, ’75.
“Sib: Drawbacks will be allowed on tbe following sugar, syrup, &c., upon which the new rate of duty has been paid, as follows:
“Bef. crystalline sugar, 3fc. per lb. less 1 per cent retention.
“Bef. B and C lower grade sugar, 2Jc.per lb. less 1 per cent retentiou.
“Syrup of sugar (syp. molasses), 6Jc. per gal. less 10 per cent.
“On the Product oe Molasses.
“N. E. rum, 6f§-c. per gal. less 10 per cent.
“ Syrup from molasses, 5c. per gal. less 10 per cent.
“Sugar from do l^c. per lb. less 10 per cent.
“Product oe Melado.
“Sugar product of melado, 2¿c. per lb. less 1 per cent.
“Syrup “ “ 5§c. “ gal. “ 10 “
“Bespe’t,
“B. H. Bristow, Secretary
“Treasury Department,
“ Washington, D. C., Get. 9, 90.
“Sir: In view of the statements made to the Department from respectable sources, alleging an excess in the present rate of drawback on refined hard sugars, the product of imported crude sugars, and of the fact that these statements are in great degree supported by reports received from officers of the Department, the existing rate of drawback on such hard sugars is hereby annulled and the provisional rate of- 3£ cents per pound, subject to the legal retention of lper centum, is established from and after the receipt of this order.
“This rate will be subject to revision when the investigation which the Department will immediately institute shall have been concluded, and if the rate of drawback then established shall be greater than that now provisionally made, all parties interested will be entitled to receive the surplus, to be calculated on the intermediate shipments.
“If, on the contrary, the rate fixed shall be smaller than that now allowed, the deficiency will in the cases of persons engaged in the trade be retained from their subsequent shipments.
“Yery respectfully,
“B. H. Bristow,
“Secretary.
“C. A. Arthur, Esq.,
“ Collector of Customs, New Yorh.
*365 The third of such regulations was dated the 23d day of October, 1875, and was as follows:
“Washington, D. 0., Oct. 23, ’75.
“To Collector oe Customs,

“■New Yorlc :

“Bestore former rates of sugar drawback on all goods purchased for export at any time, and shipped pending the investigation.
“The other part of the committee’s recommendation will be considered.
“Chas. F. Conant,

“Acting SecVy?

The statutes applicable to the claim and upon which the suit is brought in connection with the regulations are as follows:
“There shall be allowed on all articles wholly manufactured of materials imported, on which duties have been paid when exported, a drawback equal in amount to the duty paid on such materials, and no more, to be ascertained under such regulations as shall be prescribed by the Secretary of the Treasury. Ten per cenbum on the amount of all drawbacks so allowed shall, however, be' retained for the use of the United States by the collectors paying such drawbacks.” (B. S., sec. 3019.)
Also,
“An act to further protect the sinking fund and provide for the exigencies of the Government, passed March 3, 1875 (Statutes of U. S., 1874 and 1875, oh, 127, sec. 3, Yol. 18, B. S., p. 340.)
“That of the drawback on refined sugars exported, allowed by section three thousand and nineteen of the Bevised Statutes of the United States, only one per centum of the amount so allowed shall be retained by the United States.”
The findings show that on the 15th of June, 1875, the firm exported to the Dominion of Canada 25 barrels of refined sugar as white crystalline sugar, wholly manufactured by the claimants from imported sugar, on which the rate of duty referred to in the circular of the Secretary of the Treasury dated March 22,1875, had been'paid, and that such sugar corresponded in character substantially with the sugar embraced in the shipments in November, 1875, on which an allowance of 3 cents per pound was paid.
Upon the question of jurisdiction many cases have been cited by the counsel for the Government tending to show that, in a controversy of this kind, this court is without authority *366 to determine tbe lega] rights of the parties. We have examined with much care the cases applicable to the question of jurisdiction, and in the light of those decisions have arrived at a conclusion adverse to the contention of the Government.
It is true that in the early history of the legal controversy upon the subject of the right of this court to entertain jurisdiction of this class of cases, the Supreme Court held against the power of the court to afford relief to parties affected by the administration of the revenue law. In the Nichols Case (7 Wall., 122) it said: “The mischiefs that would result if the aggrieved party could disregard the provisions in the system assigned expressly for his security and benefit and sue at any time in the Court of Claims forbid the idea that Congress intended to allow any other modes to redress a supposed wrong in operation of the revenue laws than- such as are particularly given by those laws.”
Upon the authority of that decision the case of the Portland Company (6 C. Cls. R., 441) was decided in this court. It is said by this court, “ Those opinions and declarations close the doors of this court against petitions like that now under consideration, and leave us no alternative but to dismiss them.” So it was held in the Doherty Case (6 C. Cls. R., 90), “ Cases arising under the revenue laws are not within the jurisdiction of the Court of Claims, and where an importer’s goods were sold for the nonpayment of duties, and he sues to recover the balance of the proceeds of the sale, the amount being disputed, it is a clear case arising under the revenue laws.” In the case of Turner (9 C. Cls. R., 367), where the claimant sued for an allowance of leakage of distilled spirits and the question of jurisdiction was raised by the defendants, the court said: “But notwithstanding all this, we think the case is within the scope of the decision of the Supreme Court amve cited (Nichols Case), because it is a claim arising under the revenue laws; and we understand that decision to have been that the revenue laws form a system the entire administration of which has been placed in other courts of the United States than this, and is thus removed from our jurisdiction, which must rest in grant. On this ground we sustain the plea.”
In the Campbell Case (12 C. Cls. R., 470), decided in 1876, this court held:
“1. The drawback was ■ a mere gratuity proffered by the *367 Government, imposing no legal obligation npon tbe Government until tbe exporter’s right' thereto should be ascertained and established in the manner prescribed by law.
“2. The ascertainment and establishment of that right was. intrusted by law and regulations to certain executive officers, and not to the judiciary.
“3.. If those officers, for whatever reason, have refused or failed to act in the premises, that confers no authority upon this court to exercise functions delegated to them, and declare a right in the claimants which the law and regulations require to be declared by those officers in a prescribed way, and do nor. authorize to be declared by any other officers or in any other way.”
An appeal was taken and the point made in the Supreme Court that the decision in the Nichols Case was decisive of the question of jurisdiction in this court.
On appeal the Supreme Court said :
“We think the Court of Claims has jurisdiction of such a. claim : (1) Because it is founded on a law of Congress; and (2) Because the facts found in this case raise an implied contract that the United States will refund to the importer the amount he paid to the Government.
“The finding of the court is that, by the regulations, this allowance of drawback had been fixed at 17 cents per hundred pounds.
“The act of Congress having declared that on exportation there shall be allowed a drawback equal in amount to the duty paid on such material, and the Secretary having established by regulation that, as regarded the cake resulting from the manufacture of the linseed into oil and cake,the latter represents at 17 cents per hundred pound the duty on the imported seed so converted into cake, there resulted a contract that when exported the Government would refund, repay, pay back, this, amount as a drawback to the importer. If this be not so, it is because it is impossible to make a contract when the details of its execution or performance are left to officers who refuse to carry them out.
“So it is equally clear that this claim is founded on the law allowing drawback.
“The Court of Claims makes the mistake of supposing that the claim is founded on the regulations of the Secretary of the Treasury. This view can not be sustained. It is the law which gives the right, and the fact that the customs officers refuse to obey these regulations can not defeat a right which the act of Congress gives.”
The facts in the Campbell case are in legal substance the the same as in this case. In that case the claimants imported *368 from Calcutta large quantities of linseed upon wbicb they paid tbe duty required by law, which was by them without inter-mixture with any other material manufactured into linseed oil and linseed oil cake. The manufactured article was by them exported to London in conformity with regulations prescribed by the Secretary of the Treasury, and upon that exportation they demanded a drawback, which was refused by the Secretary of the Treasury.
It was contended upon the part of the Government that, inasmuch as the Secretary of the Treasury and the collector had refused to issue the drawback certificate to the claimant, the law imposed no obligation upon the United States to pay anything for such drawback. The Supreme Court decided that the claimant’s right was not dependent upon the ministerial act of the Secretary, but originated from and was founded on the statute.
The court recognized in the transaction all the elements of a contract, giving this court unquestionable jurisdiction upon that branch of the law, which authorizes suits founded upon contracts express or implied to be prosecuted in this court.
Following the line of judicial determination indicated in the Campbell Case,this court in the case of Kennedy (23 C. Cls. R., 363) entertained jurisdiction of a controversy analogous to the question involved in this proceeding. In that case no certificate was issued by the collector, the Secretary of the Treasury being in doubt as to the effect of a statute passed subsequently to the act allowing the drawback.
In the Kennedy Case the question of jurisdiction was raised by the defendants, but the court said :■ ,
“That question is settled adversely to the defendants’ position by the opinion of the Supreme Court in Campbell v. United States (107 U. S. R., 407). The facts in the two cases, so far as concerns the question of jurisdiction, are so exactly similar that it is only necessary to refer to that decision.
“ It will be observed that the claimant’s right to demand such certificate was complete before the construing act was passed. Did Congress intend to divest the right already acquired under the act of 1883?”
The substance of the decision is, that the party was entitled to recover upon the statute without reference to the ministerial act of the collector, and that right being consummate *369 and complete was not taken away by tbe subsequent statute, and judgment was given for tbe plaintiff.
In view of tbe late decisions of tbe Supreme and tbis court, we determine against tbe contention of tbe defendants, and bold that under tbe facts of tbis case we bave jurisdiction to pass upon tbe legal rights of tbe parties.
Tbe firm was paid at tbe rate of 3 cents per pound, and tbe contention upon tbe merits is as to whether they were entitled to receive tbe rate established by the regulation of March 23, 1875, on “ refined crystalline sugar.”
They contended that the sugar exported by them belonged to that class, andreceived tbe 3 cents per pound under protest.
Tbe officers of tbe revenue fixed tbe rate at 3 cents, arbitrarily determining that tbe sugar did not come under any of tbe classifications embraced in tbe regulations of tbe department.
Tbe court upon an examination and review of tbe evidence has found as a fact that tbe sugar exported by its quality came within tbe classification of refined crystalline sugar,” upon which a drawback of 3f cents per pound was established by tbe regulations in force at tbe time tbe goods were exported.
In June, 1875, a similar quabty of sugar was shipped by tbe firm upon which they were paid a rebate of 3f cents per pound; and before they made tbe exportations upon which tbis suit arises they were assured by tbe auditor of the custom-house in New York that until a change of tbe rate standard A coffee white sugar would be entitled to tbe same rate as refined crystalline.”
The contemporaneous construction of tbe officers in charge of tbe matter in tbe city of New- York was in favor of tbe theory of tbe plaintiff, and upon which be now prosecutes bis suit.
Whatever may bave been the effect of tbe order of October 9,1875, in changing tbe rate established by tbe regulation of March 23 tbe order of tbe Secretary made on tbe 23d of October restores in effect the terms of tbe regulation of March, and by that classification tbe rights of tbe petitioner must be adjusted.
It is tbe judgment of tbe court that tbe claimant, as surviving partner of Charles W. Durant & Son, recover tbe sum of $8,021.38, and for that sum a judgment is hereby ordered.