WeldoN, J.,
delivered tbe opinion of tbe court:
On September 23,1892, tbe honorable tbe Secretary of the Treasury referred to this court tbe claim of Mrs. Martin Glynn, “ a licensed sugar producer of the district of Louisiana, for a bounty on sugar which was destroyed by fire before being weighed and inspected, the claim having been made under the provisions of the Act of October 1,1890 (26 Stat. L., 583).”
It is stated in the letter of transmittal that the reference is made upon the recommendation and at the request of the First. Comptroller and Commissioner of Internal Bevenue.
• In pursuance of the right given the claimant by the action of the Secretary, a petition was filed on the 30th day of September, 1892, in which, in substance, it is alleged that during October, November, .and December, 1891, the claimant was a producer of sugar from sugar cane grown in the United States, in the State of Louisiana, duly licensed under the said act of Congress; that during three months she produced at her factory “Bevenue,” from cane grown on her plantation “Bes-cue,” in said State, under license No. 252, as follows: In October 17 hogsheads, in November 40 hogsheads, in December 108 hogsheads — in all, 165; tha’t in the production of which she complied with all the rules and regulations prescribed by the Commissioner of Internal Bevenue; that on the 30th of December, 1891, claimant called upon the deputy collector of the district in which the factory was situated to inspect and sample and weigh said sugar; in compliance with said request-he sampled and weighed 20 hogsheads, promised to return on the 2d of January and complete weighing; he did not return,, *97 and'on tbe 7tb day of January, 1892, tbe factory and said 145 bogsbeads of sugar were destroyed by fire; tbat said sugar so destroyed amounted to 162,458 pounds, testing between 80° and 90° by tbe polariscope; tbat claimant is entitled under said act to If cents on eacb pound of sugar, and bas made application to tbe Commissioner of Internal Revenue for tbe same.
To tbe petition, by leave of tbe court, an amendment was made on tbe 18tb of December, 1896, as follows: “Which claim was examined and allowed by the Commissioner of Internal Revenue May 10,1892, and referred to tbe proper accounting officers for settlement; tbat tbe proper accounting officers settled tbe account, and on May 21 tbe First Comptroller admitted and certified to tbe Register of tbe Treasury a balance of $2,843.01 as due claimant.”
Tbe original petition counted upon the liability of tbe defendants because of a substantial compliance with tbe act of October 1, 1890, entitling tbe claimant to a bounty of If cents on eacb pound of sugar produced and destroyed; and the amended petition counts upon a liability on tbe part of the defendants based upon tbe allowance of the Commissioner of Internal Revenue on May 10, 1892. Tbe amendment to the petition is substantially tbe allegation of an award upon tbe part of tbe Commissioner, which in law, as it claimed, constitutes tbe basis of a right of recovery on tbe part of tbe claimant.
To these contentions tbe defendants reply, as to tbe first, tbat upon tbe facts alleged and to be found from tbe evidence there is no liability uj)on the part of tbe defendants, because such facts are not a compliance with tbe requirements of .the law; tbat tbe law must be strictly construed, and in order to entitle a party to recover a strict compliance with tbe statute must be shown; tbat as to tbe amended petition there was no consummate allowance on tbe part of tbe Commissioner amounting in legal effect to an award, and tbat, whatever may have been done in tbe Department by tbe Commissioner, tbe reference of tbe claim to this court with tbe concurrence of tbe Commissioner of Internal Revenue invalidated and suspended bis action as a final award.
It is also contended by counsel for tbe defendants tbat tbe reference by tbe Secretary was improper, inasmuch as this *98 court is without power to render a judgment as required by the proviso to section 1063 of the Bevised Statutes, which is as follows:
“That no case shall be referred by the head of any Department unless it belongs to one of the several classes of cases which, by reason of the subject-matter and character, said court might, under existing laws, take jurisdiction of on such voluntary action of the claimant.”
The counsel for the defendants takes exceptions to the application filed by the claimant for a license, the form of bond, and to the general sufficiency of the acts of the claimant -in attempting to comply with the'requirements of the law entitling persons to the bounty provided by section 231 of the statute of October 8, 1891, entitled “An act to reduce the revenue and equalize duties on imports, and for other purposes.” (26 Stat. L., 567.)
The substance of sections 231 and 232 of said act, which have particular reference to the issue presented in this case, may be stated as follows: Section 231 provides a bounty of 2 or If cents per pound on all sugar prod need from sugar cane grown in the United States, depending upon the quality as ascertained and determined by a polariscopic test under such rules and. regulations as may be prescribed by the Commissioner of Internal Bevenue', approved by the Secretary of the Treasury.
Section 232 prescribes what shall be done upon the part of the producers in order to entitle them to the benefits of the statute. They shall before July 1 in each year file with the Commissioner a notice of the place of production, general description of the machinery, methods to be employed, estimate of the sugar to be produced, and an application for a license to so produce, accompanied by a bond to be approved by the Commissioner conditioned that all rules and regulations prescribed shall be faithfully observed; and section 233 provides that the Commissioner, upon receiving such application and bond, shall issue a license to produce sugar from various products, including sugar cane.
By section 235 the Secretary of the Treasury is authorized to draw warrants on the Treasurer of the United States for such sums as shall be necessary in the payment of bounties, which sums shall be certified to him by the Commissioner of Internal Bevenue, by whom the bounties shall be disbursed.
*99 The sections cited provide in substance the requirements by which the manufacturers can avail themselves of the bounty provided by law for the manufacture of sugar. The purpose of the act of 1890 was to encourage and protect persons engaged in the production of sugar by the payment of a bounty to them of a certain amount for sugars of a certain grade, and the only purpose Congress had in view in providing notice, application, bond, and license was to guard the defendants from the perpetration of fraud in compelling them to pay a bounty on sugar that had not been produced.
No question is raised as to the constitutional power of Congress to pass the act of 1890 providing the bounty sued for, that question having been settled by the decision of the Supreme Court in the case of Field v. Clark (143 U. S., 649) and the cases of United States v. Realty Company and The United States v. Gay Company (163 U. S., 427).
In the latter cases if is said:
“ The production and manufacture of sugar in the Southern and some parts of the Western States from sugar cane and from sorghum and beets had become at the time of the passage of the act of 1890 an industry in which a large number of the citizens of this country was engaged, and its prosecution involved the use of a very large amount of capital. The. tariff theretofore had been very high upon imported sugar, and the native industry had thereby been encouraged, fostered, and greatly increased. The subject how to treat this industry was under discussion in Congress while the tariff act of 1890 was before it, and it finally decided the question by enacting the bounty clause of that act.”
Eeference is made to the last decision for the purpose of showing what Congress had in view, from the standpoint of judicial interpretation, in the passage of the bounty sections in the act of 1890, and from that interpretation it is safe to assume that the act is to be liberally construed in giving to the citizens the relief intended by the act. “ Revenue laws are to be construed liberally to carry out the purposes of their enactment.” (Smith v. Fiske, 23 Wall., 380.)
The very term bounty implies liberality for the purpose of inducing persons to engage in enterprises or perform individual acts which the Government desires to encourage.
The findings show that the claimant made application under the statute to be licensed as a manufacturer of sugar, and that the Commissioner, after an examination, as it is presumed, of *100 sucb application and bond, issued a license to claimant as contemplated by the statute, and under that license'the claimant proceeded to manufacture a large quantity of sugar, upon which no bounty has been paid.
The sugar was produced during the months of October, November, and December, 1891, after the date of the license.
On the 30th of December, 1891, the sugar was ready to be inspected and weighed by the officers of the Treasury, and verbal application was made to said officers to have the same weighed and inspected, which they agreed to do; that on December 30 and 31 the weighing and inspection of the said 165 hogsheads was begun by the proper officer of the internal revenue and was completed as to 20 hogsheads, which averaged in weight 1,120.25 pounds each of sugar testing 86° by the polariscope; that on January 7,1892, before the remaining 145 hogsheads had been inspected and weighed, the same were destroyed by fire without fault on the part of claimant. The 20 hogsheads which were weighed and tested were taken indiscriminately from the lot, and subjected to the polariscope with the said result. The sugar not tested was produced from same kind and quality of cane, raised on the same land and at the same time.
The claimant made application to the Secretary of the Treasury for payment of a bounty of If cents on the sugar destroyed, and the proceedings thereon are shown in findings vn, yin, and is.
While in the notice and bond there may be technical defects in not complying with the strict letter of the law and regulations, the substance of the statute was complied with to the satisfaction of the Commissioner, who upon the faith of such application, notice, and bond issued a license, which in good faith was accepted by the claimant and upon the authority of which she invested her time and capital in the production of sugar. The defendants are estopped from denying the sufficiency of the application, notice, and bond after the license has been granted and upon the faith of which the claimant has acted. u Where a responsible officer of the Government gives a construction to a statute upon the faith of which a contractor renders a service and receives his pay, the Government can not subsequently open the transaction and recover back the *101 money upon a different interpretation of the law. (Alabama R. R. Case, 25 C. Cls. R., 31.)
“If the agents of the Government allow a contractor to believe that he is complying with his contract at the time of performing and thereby prevent him from supplying a defect which he might remedy, the Government can not afterwards claim a reduction intended to apply when the contractor was in fault.” (Merriman's Case, 20 C. Cls. R., 291.)
As to the quality of the sugar not weighed and absolutely tested, as were the 20 hogsheads, it may be said, “that is sufficiently certain which can be made certain.” This one of the maxims of the common law and one of the rules of logic, which, being applied to the question of the character of the sugar of the 145 hogsheads in suit, establishes the fact or presumption that they were of the same quality of sugar which was tested according to the strict requirements of the statute. The 20 hogsheads were taken indiscriminately from the general lot raised on the same land, of the same crop, and manufactured at the same time as the 145 hogsheads. It would be doing violence to every rule of reason to doubt for a moment the presumption that the 20 hogsheads and the 145 hogsheads were of the same kind and quality.
The object of the test prescribed and required by the statute was to ascertain with reasonable certainty the grade and quality of sugar, and if that test is made to a sufficient extent to ascertain the quality it is a substantial compliance with the statute and subserves every purpose of a detailed and minute examination and inspection.
The court therefore determines that the facts shown in finding v establish a sufficient test upon the quality of the sugar and bring it within that classification which entitled the producer to If cents per pound under the statute.
We do not fail to note the position taken by counsel for the defendants that the destruction of the sugar without the fault of the claimant will not absolve her from the performance of the conditions upon which her right to a bounty rests.
It is undoubtedly the law that “where a contract is to do a thing which is possible in itself the performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by the party nor was within his control.” (Jones v. U. S., 96 U. S., 29.)
*102 It is not necessary from the view which we have taken of the law in this case to encumber the discussion of the question of the liability of the defendants with an examination of the authorities upon what will and what will not excuse parties from the obligation of their undertakings to engage in enterprises or perform individual acts which the Government desires to encourage.
The counsel for defendants insist that the subject-matter of the reference is not within the jurisdiction of the court under the proviso to section 1063 of the Revised Statutes, and that no judgment can be rendered in favor of claimant; that it does not belong to one of the several classes of cases which by reason of the subject-matter and character of the claim the court might take jurisdiction under existing laws on the voluntary action of the claimant. If that point is well taken, it is fatal to the proceedings in this court, and the petition must be dismissed.
That contention raises a most serious contention, going as it does to the Jurisdiction of the subject-matter of the claim.
The record of the proceedings in the Treasury Department presents rather a novel condition of the claim. Every officer having any connection with the claim, except the Secretary of the Treasury in the drawing of the warrant, who has acted, passed favorably on its allowance; but in the end and before the final consummation of the claim in the form of a warrant upon the Treasury, the Secretary, at the instance of the Commissioner of Internal Revenue and the Comptroller, sends the matter here for judicial determination under section 1063 of the Revised Statutes.
Whatever may be said as to the legal effect of the allowance of the claim by the Commissioner and the approval of the Secretary and other official acts, the reference of the claim by the Secretary at the instance of the Commissioner and Comptroller suspends the legal effect of the finding in the Department and subordinates the award to the judicial power and jurisdiction of this court. Out of abundant caution, in which they are to be commended, the officers of the Department have remitted to the jurisdiction of this court the legal rights of the claimant, to be dealt with according to the law and rules of judicial investigation.
*103 It may not be necessary for us to determine tbe legal effect of tbe allowance of tbe claim in tbe Department, as shown by tbe findings; whether it is sufficient as an award upon which a suit can be successfully maintained, as alleged in tbe amendment to tbe original petition, is purely abstract in its importance if upon tbe general subject-matter there is sufficient to determine and adjust tbe legal rights of tbe parties.
Tbe case of United States v. McLean (95 U. S., 750), cited by counsel for defendants, was a suit by a postmaster for an alleged salary, which was dependent upon tbe readjustment of an executive officer, which was not readjusted at tbe time of tbe suit. Tbe Supreme Court held in substance that, inasmuch as tbe claimant’s rights arose from tbe act of an executive officer in tbe readjustment of bis salary, no right of action existed until such officer acted and afforded tbe basis upon which to predicate tbe right.
. Tbe counsel for claimant in their briefs and in oral argument rely upon tbe case of Campbell v. The United States (107 U. S., 407) as an authority to maintain tbe jurisdiction of tbe court in tbe right to adjudicate tbe subject-matter of tbe controversy and tbe rendition of a judgment.
That case originated in tbe Court of Claims and may be taken as tbe leading case upon the question of tbe jurisdiction of the court applicable to tbe kind-and quality of claim made in this proceeding. Tbe controversy arose in tbe construction of tbe fourth section of tbe act of August 5, 1861, cb. 45, which is as follows:
“That from and after tbe passage of this act there shall be allowed, on all articles wholly manufactured of materials imported, on which duties have been paid, when exported, a drawback equal in amount to tbe duty paid on such materials, and no more, to be ascertained under such regulations as shall be prescribed by tbe Secretary of tbe Treasury: Provided, That ten per centum on tbe amount of all drawbacks so allowed shall be retained for tbe use of the United States by tbe collectors paying such drawbacks respectively.”
Upon tbe facts of that case this court held that it was not within our jurisdiction; but tbe Supreme Court decided otherwise, sustaining tbe jurisdiction of the court and ordering a judgment for tbe amount of tbe claim.
Under tbe act of 1861 tbe Secretary of tbe Treasury established certain regulations, tbe substance of tbe first being that *104 the exporter to be entitled to a drawback was required to do certain acts, and upon such acts being done it became tlie duty of the collector to issue a certificate of the' amount to which the party was entitled as a drawback; the exporter did iu substance all he was required to do, but the certificate was never issued by the collector and in that connection the Supreme Court say:
“The argument of the counsel for the United States is, that until the officers of the customs comply with all the regulations of the Secretary of the Treasury and the collector issues the drawback certificate the law imposes upon the United States no obligation to pay anything for such drawback; that the law conferred upon the Secretary the right to make the regulations and the collector the power to make the certificate for payment of drawback, and that the refusal of the collector to perform the duties imposed upon him preliminary to making his certificate, and then refusing the certificate, totally defeats the claim of the party, who, by the law, is guaranteed a right to his drawback and who has complied with all' that the law requires of him to secure and enforce it.”
The court after a further discussion of the law in the same direction say:
“We think the Court of Claims has jurisdiction of such a claim (1) because it is founded on a law of Congress, and (2) because the facts found in this case raise an implied contract that the United States will refund to the importer the amount he paid to the Government. * * *
“ It is the law which gives the right, and the fact that the customs officers refuse to obey these regulations can not defeat a right which the act of Congress gives.” (Durant Case, 28 C. Cls. R., 356; Tide Water Co. Case, 31 C. Cls. R., 90.)
It is said in the Durant Case:
“Where the right of a party rests on a statute and does not require the action of a revenue officer to determine the right or to fix the amount the case is not a revenue case within the intent of the decision in Nichols. (7 Wall., 122.) Being founded on a law of the United States, it is within the jurisdiction of this court.”
In the case of Nicoll it was held, “cases arising under the revenue laws are not within the jurisdiction of the Court of Claims.”
That was a suit to recover duties improperly and illegally assessed, as alleged by the claimant, and the court decided not only that the plaintiff was without remedy because he had not pursued the requirements of the law in relation to protest, *105 but also that tbe court iu which he sought redress was without jurisdiction.
That case preceded the Campbell Case, and whatever difference in law may exist between the decisions must be decided in favor of the Campbell Case, that being the last expression of the Supreme Court.
The drawback in the Campbell Case, bearing a close analogy to the bounty in this case, differed in the opinion of the Supreme Court from the alleged payment of illegal taxes in the Nicoll Case, and upon that difference (if the cases are to be harmonized) the court held the Government not liable in one and liable in the other.
The demand in this proceeding is founded on a law of Congress, which obligates the defendants to pay a certain fixed bounty on all sugar produced from cane in the United States, in compliance with the requirements of the statute.
The right springs directly from the provisions of the law in the form of an express obligation to pay a certain compensation for certain productions on the part of persons engaged in the industry of sugar making. It is the duty of the Commissioner of Internal Revenue to disburse the appropriation to such persons as bring themselves within the provisions of the law providing for the payment of the bounty. He has ascertained and reported the amount due the claimant, but has suspended the execution of the award until more fully satisfied upon the legal question of the right of the claimant to recover. The facts have been ascertained and settled by the finding of the Commissioner in the allowance which he reported to the Secretary and which was approved by the Secretary.
The warrant was not drawn, but every act antecedent thereto to consummate the right of the claimant to the bounty was substantially done upon the part of the officers intrusted with the execution of the law. As has been said, the legal effect of the allowance may be suspended by the reference at the iustance of the Commissioner and Comptroller, but the fact of the allowance remains as an ascertainment of facts indicating a compliance with law on the part of the claimant.
Without determining the exact legal effect of the allowance in connection with the amended petition, the court decides upon the facts.found that the claimant is entitled to recover the sum of $2,843.01, as indicated m the conclusion of law.