Howry, J.,
delivered the opinion of the court:
The plaintiff company is a corporation organized and existing under the laws of Illinois and engaged in the business of distilling. During the year 1892 they owned and possessed a large quantity of spirits in distillery and bonded warehouses in Peoria, in the State of Illinois, and also in or near Silver Creek, in the State of Kentucky, and bond had been given as required by law in each case to secure the payment of the internal-revenue tax upon such spirits. A portion of said spirits were deposited in the name of W. H. Hume & Co., in Kentucky; but the spirits were owned, controlled, and the tax paid by the plaintiffs.
According to the allegations of the petition, plaintiffs, in December, 1892, requested the collectors of the respective districts to have certain spirits regauged, with a view to the withdrawal of the same from the warehouses in which they were deposited, and thereupon the collectors caused said spirits to be regauged and the contents of the several packages ascer *273 tained. Before any of the packages were withdrawn plaintiffs decided that they would not withdraw the same, nor pay the tax thereon at that time; and with the knowledge, consent, and approval of the collectors and the Commissioner of Internal Revenue, said spirits were not withdrawn from the warehouses, nor any tax demanded, but were kept and remained in the respective warehouses the same as before, and as if no regauge had been made. On or about September 29,1893, and at divers times between that date and July 7, 1894, plaintiffs, desiring to pay the tax and withdraw said spirits from the warehouses, requested that the spirits be regauged and the . number of wine and proof gallons marked upon each package, so that the true amount might be ascertained, to the end that plaintiffs might pay the tax according to the terms of the seventeenth section of the act of Congress of May 28, 1880, which provides that whenever the owner of any distilled spirits shall desire to withdraw the same from the distillery warehouse, or from special bonded warehouses, such owner may file with the collector a notice, giving a description of the packages to be withdrawn, with the request that the distilled spirits be regauged. It is further alleged that the collectors, and each of them, refused to regauge or cause said spirits to be regauged, but denied to plaintiffs the rights and privileges claimed to be due them by the provisions of the act aforesaid, and refused to grant or allow plaintiffs any reduction on account of loss of spirits since the regauge made in 1892. Whereupon demand was made upon the said collectors to furnish at plaintiffs’ expense good and accurate gaugers to make a regauge of the spirits, in order that the just and true amount in the packages might be known. Said collectors did furnish gaugers for such purpose, and the quantities of spirits in each package were correctly ascertained, and the said spirits were withdrawn from the warehouses.
It is further alleged that between the time of the regauge made in 1892 and the time when the spirits were withdrawn the quantity had been diminished by evaporation, and without any fault or negligence of the distillers or owners, to the amount of 7,229 gallons; that is to say, by the first regauge there was shown to be 136,079 gallons, and by the second regauge there was found to be 128,860 gallons. Plaintiffs offered to pay the tax on the amount found to exist at the time *274 of the withdrawal, but the collectors required plaintiffs to pay on the whole number of gallons under the first estimate. This tax was paid under protest, and it is alleged that the amount thus erroneously and illegally collected from plaintiffs was $0,506.10. Afterwards plaintiffs filed with the Commissioner of Internal Revenue an application to have the aforesaid sum refunded to them. The commissioner overruled the application upon the ground that plaintiffs were not entitled to any regauge of the spirits at the time of their withdrawal from the warehouses and the payment of the tax, holding that taxes were rightfully collected according to the regauge in 1892, without regard to the actual amount in existence at the time of the withdrawal from the warehouses.
The defendants, by leave of the court, having withdrawn their motion to place the case on the trial calendar under rule 74, demurred to the petition upon the ground that its allegations did not state facts sufficient to establish a cause of action, the Commissioner of Internal Revenue, by section 3220 of the Revised Statutes, having exclusive control of the matter.
Treating the demurrer as the substitute for a formal plea to the jurisdiction, the question at issue is whether the claim in suit is founded upon such contract, express or implied, as may be prosecuted under the general jurisdiction of the court, or, being a revenue case, falls within the special jurisdiction created by law in the Treasury Department for the determination of cases arising under the revenue laws;
The question of jurisdiction has been presented in this and other courts of the United States in many controversies growing out of the customs and revenue laws and in claims arising under special statutes before executive officers of the-different Departments, resulting in numerous decisions not entirely in harmony with each other. The general effect of the later decisions has been to modify the construction given by the earlier cases to the exclusive power of executive officers acting under special statutes, and to enlarge the power of the courts to deal with the subject wherever the matter at issue disclosed any of the elements of contract.
Among the later decisions is the leading case of Campbell v. United States (107 U. S. R., 407).
Without attempting to review the cases, it may be said that this court, by statute, has general jurisdiction to hear and determine all claims founded upon any law of Congress or *275 upon, any regulation of an Executive Department, or upon any contract, express or implied, with the United States.
But in providing for the assessment and collection of certain revenue, which includes taxes laid upon distilled spirits, it is provided by section 3220 of the Revised Statutes that—
“ The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; also to repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court, for any internal taxes collected by him, with the cost and expense of suit; also all damages and costs recovered against any assessor, assistant assessor, collector, deputy collector, or inspector,.in any suit brought against him by reason of anything done in the due performance of his official duty: Provided, That where a second assessment is made in case of a list, statement, or return which, in the opinion of the collector or deputy collector, was false or fraudulent, or contained any understatement or undervaluation, such assessment shall not be remitted, nor shall taxes collected under such assessment be refunded or paid back, unless it is proved that said list, statement, or return was not false or fraudulent, and did not contain any understatement or undervaluation.”
It is argued for plaintiffs that the right to bring this suit is given by the act of May 28,1880 (21 Stat. L., 145), which is now-to be taken as a part of section 3294 of the Revised Statutes, and that, although section 3220 confers upon the Commissioner of Internal Revenue the right to refund taxes illegally collected, plaintiffs can not be deprived of their right to redress ■in the courts upon the refusal of the commissioner to allow for evaporation and leakage of spirits in bond, the purpose of the law conferring the right of action for the recovery of claims being to afford relief against the illegal act of the Executive Department. The contention, if sound, would bring the suit within the rule declared in the case of Durant v. The United States (28 C. Cls. R., 356), following the Campbell Case (107 U. S. R., supra).
Section 17 of the act of May 28, 1880, which is a part of what is commonly called the Carlisle Act, provides that—
“ Whenever the owner of any distilled spirits shall desire to withdraw the same from the' distillery warehouse, or from a *276 special bonded warehouse, he may file with the collector a notice giving a description of the packages to be withdrawn, and request that the distilled spirits be re gauged; and thereupon the collector shall direct the gauger to regauge the same, and mark upon each package so regauged the number of gauge or wine gallons ánd proof-gallons therein contained. If upon such regauging it shall appear that there has been a loss of distilled spirits from any cask or package, without the fault or negligence of the distiller or owner thereof, taxes shall be collected only on the quantity of distilled spirits contained in such cask or package at the time of the withdrawal thereof from the distillery warehouse, or special bonded warehouse: Presided, however, That the allowance which shall be made for such loss of spirits as aforesaid shall not exceed one proof-gallon for two months, or part thereof, one and one-half gallons for three and four months, two gallons for five and six months, two and one-half gallons for seven and eight months, three gallons for nine and ten months, three and one-half gallons for eleven and twelve months, four gallons for thirteen, fourteen, and fifteen months, four and one-half gallons for sixteen, seventeen, and eighteen months, five gallons for nineteen, twenty, and twenty-one months, five and one-half gallons for twenty-two, twenty-three, and twenty-four months, six gallons for twenty-five, twenty-six, and twenty-seven months, six and one-half gallons for twenty-eight, twenty-nine, and thirty months, seven gallons for thirty-one, thirty-two, and thirty-three months, and seven and one-half gallons for thirty-four, thirty-five, and thirty-six months: Provided, aleo, That the foregoing allowance of loss shall apply only to casks or packages of a capacity of forty or more wine-gallons, and that the allowance for loss on casks or packages of le'ss capacity than forty gallons shall not exceed one half the amount allowed on said forty-gallon cask or package; but no allowance shall be made on casks or packages of less than twenty gallons: And provided further, That the proof of such distilled spirits shall not in any case lie computed at the time of withdrawal at less than one hundred per cent.”
Under this statute the regauge is an important step in determining how much the leakage or evaporation is, and how much the taxes shall be. It is the prerequisite to any claim on account of the diminution of the spirits in the warehouse. The reganging may be, as contended by counsel, a mere incident of the main fact, which is assumed to be the payment of the tax only upon the amount of spirits found to exist at the time of the withdrawal. But it is an important fact, made necessary by the terms of the statute, to determine the amount of spirits actually in bond ready to be withdrawn, and it must *277 appear upon such regauging that there has been a loss of distilled sjurits without the fault or negligence of the distiller or owner. It is only in case of loss without the distiller’s or owner’s fault that taxes can be diminished for leakage at all. The functions of the Treasury officials in such cases appear to be more than ministerial. The proof of this lies in the fact that by the regauge and its results the revenue officials are authorized to pass upon questions essential to the right to claim that the tax can only be collected on the quantity as of the time of the withdrawal. The amount of the spirits must be determined, and if there be any loss then it must next appear that such loss is not the fault or negligence of the distiller or owner. The graded scale of deductions .to be made can only begin after the essential things first required by the statute are ascertained, and this involves the exercise of judgment upon the part of those whose duty it is to determine the essential requirements. In any assessment or collection growing out of the regauge and claim for loss, and whether any such loss be occasioned by the fault or negligence of the distiller or owner, an appeal lies to the Commissioner of Internal Revenue, who determines the matter under the provisions of section 3220 and the regulations prescribed by the Secretary of the Treasury.
The Campbell Case (supra) grew out of a provision of the act of August 5,1861, which allowed on all articles wholly manufactured of imported materials on which duties were paid when exported, a drawback equal to the duty paid on such materials, to be ascertained under regulations prescribed by the Secretary of the Treasury. There it appeared the Secretary had adopted regulations under which the collector refused to per- • form the duties imposed upon him preliminary to making the certificate for drawback, and refused the certificate, which defeated the claim of the party who by the láw was granted a right to his drawback and who had complied with all that the law required of him to secure and enforce it. The Supreme Court held that the claimant’s right was not dependent upon the act of the Secretary, but originated from and was founded upon the statute, and consequently suit could be maintained in this court for the amount of the drawback. The act of the Secretary in cases arising under that law was ministerial. While ■the law conferred upon the Secretary the right to make regulations and upon the collector the right to make the certificate, *278 tbe refusal of tbe collector to perform tbe duties imposed on bim preliminary to making tbe certificate and then refusing tbe certificate itself totally defeated the claim of tbe exporter, which tbe court declared tbe collector could not do.
It was never contemplated by tbe statute under which this claim is made that upon tbe action of tbe Commissioner determining tbe matter adversely to tbe distillers’ claim that tbe courts should be called upon to review tbe Commissioner’s discretionary decision. Tbe Commissioner’s functions with respect to tbe matter referred to under tbe statute are judicial in their nature, and bis action concludes a claimant from taking to tbe courts for investigation tbe things designed to be finally settled by bim. Whatever right, then, these plaintiffs have rests upon a statute which reouires tbe action of a revenue officer to determine. Not only must tbe loss of tbe spirits be fixed and tbe amount thereof determined, but it must also be found that it was without tbe fault of the' distiller or owner by tbe Commissioner of Internal Revenue. This excludes our jurisdiction.
These views render unnecessary any consideration of tbe right of tbe plaintiffs to have a second regauge of tbe spirits as of tbe time they were actually taken out of bond and tbe taxes paid.
The demurrer is sustained and tbe petition dismissed.