## CAMPBELL *v.* UNITED STATES.

A party who, under sect. 4 of the act of Aug. 5, 1861, c. 45, is entitled to the drawback there mentioned may, when payment thereof has been refused, maintain a suit therefor in the Court of Claims against the United States.

APPEAL from the Court of Claims.

The case is stated in the opinion of the court.

*Mr. Joseph H. Choate* and *Mr. William M. Evarts* for the appellants.

*Mr. Assistant Attorney-General Maury* for the United States.

MR. JUSTICE MILLER delivered the opinion of the court.

The fourth section of the act of Aug. 5, 1861, c. 45, reads as follows: "That from and after the passage of this act there shall be allowed, on all articles wholly manufactured of materials imported, on which duties have been paid, when exported, a drawback equal in amount to the duty paid on such materials, and no more, to be ascertained under such regulations as shall be prescribed by the Secretary of the Treasury: *Provided*, that ten per centum on the amount of all drawbacks so allowed shall be retained for the use of the United States by the collectors paying such drawbacks respectively."

On the 22d of January, 1862, the Secretary established such regulations as he deemed appropriate, the first of which is this: —

"To entitle the exporter to such allowance of drawback, he must, at least six hours previous to the putting or lading any of the articles intended to be exported by him for benefit of drawback on board any vessel or other conveyance for exportation, lodge with the collector of customs for the district from which such exportation is to be made, an entry setting forth his intention to export such articles, and the marks, numbers, and a particular description of the same, with their quantity and value, and designating the manufacturer thereof, the place where deposited, the name of the vessel or other conveyance in or by which, and the port or place to which the same are intended to be exported, and also describing in such entry the material or materials severally from which he claims the arti-

cles to have been manufactured, designating when, where, whence, by whom, and in what vessel or other conveyance the same was or were, imported, and specifying the quantity and value thereof used in the manufacture. This entry shall, upon presentation, be verified by the oath or affirmation of the proprietor and the foreman of the manufactory in which such articles were made."

Other regulations require the collector and the surveyor to make the necessary examination to ascertain if the articles described in this entry be as stated, and to mark and designate them accordingly, and to verify the weight, gauge, measure, or amount, and to superintend the lading for export, &c.

All this having been done, and the oath of the exporter and his bond, with condition prescribed by the rules, being given, the collector is to give a certificate of the amount to which the party is entitled as drawback, on which he is to receive the money.

George W. Campbell and George A. Thayer, survivors of Ludlow D. Campbell, deceased, sued in the Court of Claims for a drawback on account of large amounts of linseed cake made by them out of linseed imported from a foreign country, and which cake they exported to London.

Their petition was dismissed by that court, on the ground, as stated in their opinion, that it was not a case of which they had jurisdiction.

The court, however, did entertain jurisdiction of the case; an answer was filed on behalf of the United States denying the allegations of the petition, testimony was taken, and a full and elaborate finding of facts was made, and on this, the court, as a conclusion of law, find that for want of jurisdiction of the subject-matter the petition is dismissed.

This finding of facts shows that in the months of September, October, November, and December, 1870, claimants imported from Calcutta large quantities of linseed, for which they paid the duty of sixteen cents per hundred pounds according to law, which was by them, without intermixture with any other linseed or other material, manufactured into linseed oil and linseed cake, of the latter of which article there was produced therefrom 5,156,585 pounds.

It was for the exportation of part of this latter product that the drawback is claimed in this suit. As, however, this was done by several shipments at different times, and as the finding of facts is precisely the same in the case of each shipment, except as to date, quantity, and the name of the vessel, we give here verbatim the finding as to the first: —

" On the nineteenth day of January, 1871, the claimants and said Ludlow D. Campbell were the owners of and had in their possession 447,712 pounds of linseed cake, being parcel of the aforesaid 5,156,585 pounds, and desiring and intending to export the same from New York to London for the benefit of the drawback authorized by the fourth section of the ' Act to provide increased revenue from imports to pay interest on the public debt, and for other purposes,' approved August 5, 1861, duly presented to and lodged with the collector of customs for the port of New York, before putting or lading any of the said cake on board any vessel for exportation, an entry of said linseed cake for export by the ship ' Sterling Castle,' which was accompanied with the certificate and oath required by, and was in all respects in conformity with, the regulations prescribed by the Secretary of the Treasury, in pursuance of the requirement of the fourth section of said act, and the said claimants and said Ludlow D. Campbell in all respects conformed to such regulations in respect to drawback, which allowance had been by said regulations fixed at seventeen cents per one hundred pounds, and made payable by the United States thirty days after clearance of the vessel by which exportation was made, but the said collector, acting under instructions from the Secretary of the Treasury, given on the fifth day of December, 1870, wholly refused to perform or cause to be performed in any manner any other act than the receipt of said entry prescribed by said regulations to be done, or caused to be done, by a collector of customs under the said fourth section of said act.

" Thereafter, in the month of January, 1871, the said 447,712 pounds of linseed cake were shipped by the claimants and said Ludlow D. Campbell, on the said ship ' Sterling Castle,' which vessel, with said linseed cake on board, cleared at the custom-house at the port of New York for London on the thirtieth day of January, 1871, and said cake was thereupon exported and

carried by said vessel from New York to the port of London, in England, and there discharged and delivered, and no part thereof has been at any time relanded in any port or place within the limits of the United States."

The argument of counsel for the United States is, that until the officers of the customs comply with all the regulations of the Secretary of the Treasury, and the collector issues the drawback certificate, the law imposes upon the United States no obligation to pay anything for such drawback; that the law conferred upon the Secretary the right to make the regulations; and the collector the power to make the certificate for payment of drawback, and that the refusal of the collector to perform the duties imposed upon him preliminary to making his certificate, and then refusing the certificate, totally defeats the claim of the party, who, by the law, is guaranteed a right to his drawback, and who has complied with all that the law requires of him to secure and enforce it. To the same effect is the opinion of the Court of Claims.

It would be a curious thing to hold that Congress, after clearly defining the right of the importer to receive drawback upon subsequent exportation of the imported article on which he had paid duty, had empowered the Secretary by regulations, which might be proper to secure the government against fraud, to defeat totally the right which Congress had granted. If the regulations of themselves worked such a result, no court would hesitate to hold them invalid as being altogether unreasonable.

But the regulations in this case are not unreasonable, nor do they interpose any obstacle to the full assertion and adjustment of plaintiffs' right. It is the order of the Secretary of the Treasury forbidding the collector to proceed under these regulations or in any other mode, which is the real obstacle. Is that order a defence to this action? Can the Secretary, by this order, do what he could not do by regulations, — repeal or annul the law? Can he thus defeat the law he was appointed to execute, by making regulations, and then, by ordering his officers not to act under them, and not to act at all, place himself above the law and defy it?

We think the Court of Claims has jurisdiction of such a claim: 1. Because it is founded on a law of Congress; and, 2.

Because the facts found in this case raise an implied contract that the United States will refund to the importer the amount he paid to the government.

The finding of the court is that, by the regulations, this allowance of drawback had been fixed at seventeen cents per hundred pounds.

The act of Congress having declared that on exportation there shall be allowed a drawback equal in amount to the duty paid on such material, and the Secretary having established by a regulation that, as regarded the cake resulting from the manufacture of the linseed into oil and cake, the latter represents at seventeen cents per hundred pounds the duty on the imported seed so converted into cake, there resulted a contract that when exported the government would refund, repay, pay back, this amount as a drawback to the importer. If this be not so, it is because it is impossible to make a contract when the details of its *execution* or *performance* are left to officers who refuse to carry them out.

So it is equally clear that this claim is founded on the law allowing drawback.

The Court of Claims makes the mistake of supposing that the claim is founded on the regulations of the Secretary of the Treasury. This view cannot be sustained. It is the *law* which gives the right, and the fact that the customs officers refuse to obey these regulations cannot defeat a right which the act of Congress gives.

The second section of the act of Sept. 20, 1850, c. 84, entitled "An Act to enable the State of Arkansas and other States to reclaim the 'Swamp Lands' within their limits," declares: "That it shall be the duty of the Secretary of the Interior, as soon as may be practicable after the passage of this act, to make out an accurate list and plats of the lands described as aforesaid and transmit the same to the governor of the State, and, at the request of said governor, cause a patent to be issued to the State therefor; and on that patent the fee-simple to said lands shall vest in the said State."

This duty was almost wholly neglected by the Secretary.

In the case of *Railroad Company* v. *Smith*, 9 Wall. 95, 99, it was insisted that the failure of the Secretary to act made

these lands subject to a grant for railroad purposes of a date subsequent to the swamp-land act. This proposition was thus answered by this court: " Must the State lose the land, though clearly swamp land, because that officer has neglected to do this? The right of the State did not depend on his action, but on the act of Congress, and though the States might be embarrassed in the assertion of this right by the delay or failure of the Secretary to ascertain and make out lists of these lands, the right of the States to them could not be defeated by that delay. . . . Any other rule results in this, that because the Secretary of the Interior has failed to discharge his duty in certifying these lands to the State, they therefore pass under a grant from which they are excepted beyond doubt, and this when it can be proved by testimony capable of producing the fullest conviction, that they were of the class excluded from plaintiff's grant," that is, were granted to the State as swamp lands.

And in *French* v. *Fyan*, 93 U. S. 169, 173, the court, reaffirming *Railroad Company* v. *Smith*, said: " There was no means, as this court has decided, to compel him (the Secretary) to act; and if the party claiming under the State in that case could not be permitted to prove that the land which the State had conveyed to him as swamp land was in fact such, a total failure of justice would occur, and the entire grant to the State might be defeated by this neglect or refusal of the Secretary to perform his duty."

The application of this reasoning to the present case is too clear to need illustration.

It is an error to suppose that the officers of customs, including the Secretary, are in regard to this law created a special tribunal to ascertain and decide conclusively upon the right to drawback. Their function is entirely ministerial. They are authorized to pass upon no question essential to the claimant's right so as to conclude him in a court of competent jurisdiction. From the moment he presents his sworn entry, they simply ascertain quantities, identify and mark packages, accept bonds and sureties, and see that the exported article leaves the port in the ship. These and like duties being discharged, it is the collector's duty — a mere ministerial function — to give the

certificate of drawback.   The amount of it is fixed at seventeen cents per hundred pounds by the regulation; he has nothing to do but to calculate the amount at that rate on the number of pounds shipped.   He exercises no judicial or *quasi* judicial function.   He concludes nobody's rights, and has no power to do so.   The rights which the law gives cannot be defeated by his refusal to act, nor by his decision that no drawback was due.

Neither the act of Congress, nor any rule of construction known to us, makes the claimant's right, when the facts on which it depends are clearly established, to turn upon the view which the collector, or the Secretary, or both combined, may entertain of the law upon that subject, and much less upon their arbitrary refusal to perform the services which the law imposes on them.

A suggestion is made that the right to enforce the drawback in the court is affected by the fact that it is a gratuity.

It has never been supposed that there was a gratuity in all the cases where imports are free of duty. . The purpose of the drawback provision is to make duty free, imports which are manufactured here and then returned whence they came or to some other foreign country, — articles which are not sold or consumed in the United States.   The linseed in this case was bought abroad and imported for the purpose of being manufactured, and the product immediately sent out of the country. The drawback provision was simply a mode of making the linseed so imported and exported without distribution in the country duty free, and we see no gratuity in the case.

But if it were a free gift, it is not for the officers of the government to defeat the will of Congress on this subject by refusing to execute the law.

We are of opinion that the facts found by the Court of Claims establish the right of appellants to recover a judgment for the exported cake at the rate of seventeen cents per hundred pounds; *and the cause is remanded with directions to enter such a judgment.*