Howry, J.,
delivered the opinion of the court:
Under the general jurisdiction of the court and on the facts hereinafter stated plaintiff instituted his action to recover the bounty on sugar'manufactured under the act entitled “An act to reduce the revenue andequalize duties on imports, and for other purposes,” approved October 1, 1890 (26 Stats., 567-583).
Under the act mentioned the plaintiff applied for and obtained a license for the year beginning July 1, 1892, and ending June 30,1893, to manufacture sugar from sugar cane grown within the United States, at the Morbihan plantation, in the parish of Iberia, in the State of Louisiana. Under said license and during said license year he manufactured a large quantity of sugar on said plantation, and was engaged in manufacturing 64,841 pounds more when, on March 11,1893, his said plantation and sugar plant were sold by the sheriff under an execution duly issued against him in favor of Joseph Weill, who thereupon became the purchaser and took possession (of the plantation and sugar plant) and proceeded to and did complete the manufacture of sajd sugar in plaintiff’s name under the license on the plantation with the machinery and with the methods described in-plaintiff’s application for license, manufacturing 64,841 pounds of sugar, testing not less than 80 degrees with the polariscope.
Upon the completion of the manufacture Of the sugar the collector of internal revenue for the district was notified by the plaintiff that the sugar upon which bounty would be claimed, “produced by me at my factory, license No. 514, would be *398 consigned to Joseph Weill ,& Bros.,” and the collector was requested to weigh and inspect the same upon notice by the consignees of its arrival at New Orleans.
Upon receipt of the sugar by the consignees notice was served upon the collector by them of its arrival, and request was made that the sugar should be weighed and inspected. This notice stated the production of the sugar by the plaintiff at his factory and that bounty was claimed thereon. Thereupon the collector directed the weighing of the sugar “produced by William B. Taylor, of Morbihan plantation, shipped by him to Joseph Weill & Bros.,” according to regulations. The weigher returned his certificate on June 2, 1893, showing' what the sugar netted. Application for the bounty was then presented and rejected by. the Treasury Department. Whereupon, August 11,1893, plaintiff formerly applied for the bounty, and the Treasury Department issued the regulation set forth in the finding covering the case of the sale of a sugar factory and of materials for making sugar during the license period by a person other than the original licensee.
The question in the case is whether the sugar upon which the bounty is claimed was manufactured under a license and bond as required by the statutes granting the bounty. As the sugar was not completely manufactured at the time of the sale by the sheriff, and as Weill, the purchaser who completed the manufacture, had no license to do so and had given no bond, it is contended by the Government that the claim is not one provided for by law, the title to the plantation upon which the sugar was manufactured having passed out of the plaintiff holding the license to produce the sugar.
The act of October 1, 1890 (26 Stats., 567-583), under which the bounty is claimed, provides for the payment, on and after July 1, 1891, and until June 1,1905, under the provisions of section 3689 of the Revised Statutes of the United States, to the producer of sugar testing not less than 90 degrees by the polariscope, from beets, sorghum, or sugar cane grown within the United States, or from maple sirup produced within the United States, a bounty of 2 cents per pound; and on sugar testiug less than 90 degrees by the polariscope, and not less than 80 degrees, a bounty of If cents per pound, under such rules and regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall provide. (Subsection 231.)
*399 Section 3689, Revised Statutes, 724, referred to in subsection 231, is as follows:
“ There are appropriated, out of any moneys in the Treasury not otherwise appropriated, for the purposes hereinafter specified, such sums as may be necessary for the same respectively; aud such appropriations shall be deemed permanent annual appropriations.”
’ Subsection 232 of the act October 1,1890, requires the producer of sugar to file, prior to July 1 of each year, with the Commissioner of Internal Revenue, notice of the place of production, with a general description of the machinery and methods to be employed by him, with an estimate of the amount of sugar proposed to be produced in the current or nest ensuing year, aud application for license to so produce must be accompanied by a bond in a penalty, with sureties to be approved, conditioned that the applicant will faithfully observe all rules and regulations that shall be prescribed for such manufacture and production of sugar.
Subsection 233 provides that the license so issued shall not extend beyond one year from its date.
Subsection 234 provides that no bounty shall be paid to any person engaged in refining sugars imported into the United States, or produced therein, upon which the bounty has already been paid or applied for, nor to any person unless he shall have been first licensed, and only upon sugar produced by such person from sorghum, beets, or sugar cane grown within the United States, or from maple sap produced therein. This section further requires the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make all needful rules and regulations from time to time for the manufacture of sugar grown within the United States.
Subsection 235 provides the methods of paying the bounties.
A license to carry on a business, without which it would be unlawful to engage in the business, is a mode of imposing taxes on the licensed business. In cases of this kind the license is a personal privilege restricted to the person paying the tax and conducting the business under it, and can not be transferred except as the statute admits.
In United States v. Glab (99 U. S. R., 225) the Supreme Court held that where a tax or quasi license for one year had been paid by a firm of brewers, which before the expiration of the year had been dissolved by the retirement of one partner, the *400 other might carry on the same trade or business at the same place for the remainder of the year without again paying such tax for the remainder of the year or any part thereof. This case arose under a section of the statute which provided that when any person paying the special tax dies, his wife or child, or executors or administrators, or other legal representatives, might occupy the premises and in like manner carry on for the residue of the term for which the tax was paid the same trade or business as the deceased before carried on upon the same premises, without the payment of any additional tax, and that when any person moved from the premises for which the trade or business was taxed to any other place, he might carry on the busiuess specified in the collector’s register at the place to which he removed without the payment of the additional tax; provided, however, that in the case of death, change, or removal the name of the successor to any person deceased and of the person making such change or removal should be registered with the collector under regulations to be prescribed by the Commissioner of Internal Revenue. One of the partners had purchased the interest of the other, and became the sole owner of the business for which the license was issued. The court held that as no new member had been admitted into the firm, and that as the business was continued at the same place, the case was within the equity of the provision, the case being-similar to one where a person died and his survivor carried on the business.
The court was of opinion that if the partner remaining should associate with him another in the place of the outgoing partner, or if any change had been made in the trade or business, or if any change had been made in the place or premises where the trade or business was carried on, or there was any just ground to conclude that the door would be opened to any fraud or imposition, or to any loss of revenue or inconvenience to the revenue officers, “difficulty undoubtedly would arise.”
Unlike those cases arising under statutes which have for their object the collection of revenue for the Government, the case before us is one coming under an act conferring benefits upon any person engaged in the special business of manufacturing sugar. The object of the law is to encourage the production of that article within the United States, but conditions are imposed before any bounty can be collected to the effect that all rules and regulations prescribed by the officer whose duty *401 it is to make them, in furtherance of the objects of the statute, shall be complied with by the person seeking the benefit of the law.
While the regulations, when prescribed, are the incidents of the main purpose, it is competent for the Commissioner of Internal Revenue to make all such' regulations as will not only supplement this purpose, but likewise prevent frauds upon the Treasury in claiming bounties for the manufacture of sugar. The bond required to be taken preliminary to the issuance of a license is meant to compel the observance of the law and all requirements of the Commissioner of Internal Revenue and to supply reasonable safeguards to the Government in the presentation and payment of bounty claims.
No rule or regulation was made by the Commissioner of Internal Revenue to cover the case of the transfer of the title to land upon which sugar cane was growing of the sugar plant located during the license year until after the year of the production of the sugar on which the bounty is now claimed. It does not appear precisely when the manufacture of the sugar was completed, but the date of its shipment is presumably about the date of its completion into the manufactured article. In August' following, however, the Commissioner of Internal Revenue made the order denying to the purchaser of a sugar factory, sugars, and material the right to bounty where the purchase was made during the licensed period, but providing-in all such cases that the claim for bounty should be made by the party originally licensed upon the conditions set forth in the regulation. The payment of the bounty was accordingly refused to Weill as the purchaser of the Morbihan plantation and also to plaintiff, although an agreement in writing between plaintiff and Weill was filed with the Commissioner showing that the manufacture of the sugar should be completed in plaintiff’s name under his license. With this agreement the written consent of the sureties on plaintiff’s bond continuing their liability thereunder was also filed.
It is contended by the plaintiff that the benefit of the regulation should be extended to him now, although the regulation was made after the filing of the written agreement between him and Weill and the filing of the written consent of the sureties acknowledging their liability.
No doubt the regulation was the result of the knowledge of the Commissioner of Internal Revenue of what had originally *402 transpired between the plaintiff and Weill with respect to the continuation of the business in plaintiff’s name after the sale in March of the license year. Though the parties dealt with the manufacture of the sugar in plaintiff’s name until it was fully manufactured, and even up to its consignment, yet the regulations can not be said to relate back to any period of time before its adoption. But while it had no technical retroactive effect, the circumstances of its adoption tend to show that uothing could be urged against the payment of the bounty to plaintiff, except that no regulation had then been made permitting it to be done because of the sale of the plantation and sugar factory.
Where an importer was entitled under a law of Congress to receive drawback upon a subsequent exportation of the imported article on which he had paid duty, and the Secretary of the Treasury had been empowered by Congress to make regulations which might be proper to secure the Government against fraud, it was held that if the regulations worked the result of defeating the right which Congress had granted such regulations would be invalid because unreasonable. Campbell v. The United States (107 U. S. R., 407, 410).
The court also held that this was in the nature of a contract and was not a revenue case.
The right to make regulations or leave them unmade does not carry the right to defeat the law. It was the duty of the Commissioner of Internal Revenue, under the act of October 1, 1890, to make such regulations for the manufacture of sugar as would effectuate the purpose of the law.
In the case at bar every rule and regulation, as well as every requirement of the statute, had been fully complied with by the plaintiff up to the time of the transfer of the property under the execution sale. It must be assumed that when Weill purchased the property and continued the manufacture of the sugar in the name of the 'execution debtor, he supposed he was doing the very thing that would entitle him through the plaintiff to claim the bounty. It was an easy matter for him to apply for and obtain the authority to complete the manufacture in his own name. There is no reason to suppose that had he done so his application would have been denied. He was one of the sureties on the bond which plaintiff gave and already liable for the performance by plaintiff of all the obligations of the bond. The sugar factory remained on the *403 plantation after the sale and the sugar was produced from cane grown there. It was produced in the license year and at the place designated in .the application. There could be but one bounty paid for whatever sugar was manufactured on the premises for that year. If Taylor had died while the sugar was in process of manufacture his executors or legal representatives duly authorized would have been entitled to collect the bounty upon completing the manufacture of the sugar. If the licensee had become bankrupt under any proceedings in bankruptcy or had resorted to insolvency proceedings under the laws of the State, his assignee would unquestionably have succeeded to whatever rights he had under the license, and by completing the manufacture such an assignee would, we think, have been entitled to the payment of the bounty, assuming the full compliance on his part with all the conditions of the bond of the assignor. There is, it is true, a certain privity between the licensed manufacturer and his representative under bankruptcy or insolvency proceedings that does not exist between the owner of the license and one assuming ownership by virtue of a sale of the property during the license year. But where there is no suggestion of fraud or turpitude of any kind; no concealment or apparent opportunity for a purchaser under legal process to defraud the Treasury, and the manufacture of sugar is completed in the license year on the premises under the bond given for its production, and in the name of the owner of the license, without objections from the sureties on the bond, we think the claim for the bounty is within the equity of the provision for its payment in the case of a sale of the property under execution during the license year, where it also appears that the sureties ratified the transaction and acknowledged the force of the bond. But the bounty can only be paid to the original owner for the use of the person completing the manufacture and not to the purchaser of the property.'
It is the opinion of the court that the claimant recover the sum of $1,134.71, for which judgment will be entered.