## BRAGG *v.* UNITED STATES (No. 485).[1]

IMPORTATION OF AMERICAN PRODUCTS THERETOFORE EXPORTED.

Certain animals, American products, were exported while the tariff act of 1897 permitting the free entry of these on return to the United States was in force; these animals were returned to the United States subsequent to the enactment of the tariff law of 1909, by which free entry was denied an importation of this kind. *Held*, a tariff law creates no vested rights to import free or at any particular rate of duty goods, wares, merchandise, or products of any kind; no contractual obligation had been incurred by the taxing power incapable of being impaired by a subsequent modification or repeal of the provision in question; the law in force at the date reentry was sought applies and the importation of animals was properly held dutiable under paragraphs 225 and 227, tariff act of 1909.—Campbell *v.* United States (107 U. S., 407) distinguished.

United States Court of Customs Appeals, May 1, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23875 (T. D. 30879).

[Affirmed.]

*Stanley Jackson* for the appellant.

*D. Frank Lloyd*, Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

SUBMITTED ON BRIEFS.

SMITH, Judge, delivered the opinion of the court:

On certain dates in the years 1906, 1907, and 1908, there was exported from the United States to Mexico, through the port of Calexico, Cal., in the collection district of San Diego, certain live stock, to wit, 2 mares, 1 stallion, 1 gelding, and 30 head of steers. The Treasury regulations having been complied with at the time of exportation, the animals, as American products, became entitled on their return to the United States to free entry under the provisions of section 2 and paragraph 483 of the tariff act of 1897, the material parts of which read as follows:

SEC. 2. That on and after the passage of this act, unless otherwise specially provided for in this act, the following articles when imported shall be exempt from duty:

\*        \*        \*        \*        \*        \*        \*

483. Articles the growth, produce, and manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; \* \* \* but proof of the identity of such articles shall be made under general regulations to be prescribed by the Secretary of the Treasury. \* \* \*

---

[1] Reported in T. D. 31575 (20 Treas. Dec., 962).

Subsequent to the exportation of the animals this part of the provision was modified by the tariff act of August 5, 1909, so as to read as follows:

FREE LIST.—That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States or into any of its possessions * * * be exempt from duty:

\* \* \* \* \* \* \*

500. Articles the growth, produce, or manufacture of the United States, *not including animals*, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; * * * but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury. * * *

In view of this change in the free list the collector of customs, on the return of the animals to the United States in October, 1909, refused to admit them "free" and assessed them for duty under the provisions of paragraphs 225 and 227 of the act of August 5, 1909, which was the tariff law in force at the time of importation. The importer protested that as all the requirements of the regulations prescribed by the Secretary of the Treasury to entitle the animals to exemption from duty on their return had been complied with at the time of their exportation they were not subject to duty and that the subsequent passage of a new tariff act could not affect their nondutiable status. The Board of General Appraisers overruled the protest and the importer appeals.

The facts of the case as above recited are admitted, and on them the importer urges, as a matter of law, first, that having done everything required by the existing statute and regulations to entitle the live stock to exemption from duty on their return, the right to enter them free vested at the time of exportation and that of that right he could not be divested by subsequent legislation; second, that having met the statutory conditions prescribed for the free entry of American products on their return to the United States, the Government was bound to admit them by a contractual obligation which could not be impaired by a *post facto* enactment; and, third, that whether or not a vested right or contract existed paragraph 500 should be so construed as to obviate the infliction of a hardship on the importer.

As to the first point, it is sufficient to say that tariff laws create no *vested rights* to import free or at any particular rate of duty goods, wares, merchandise, or products of any kind. While such laws are in force a right to import, as therein provided, may be said to exist; but its continued enjoyment is dependent on the continuance of the law which gave it, and therefore it can not be considered as vested in the sense that it has become property of which the owner can not be deprived without due process of law. The citizen has no *vested* rights in statutory exemptions from taxation, and such exemptions

are always subject to recall when they have been extended as a privilege and not granted for a consideration received by the public. (Cooley's Const. Lim., 546, 547; Cooley on Taxation, 111.) The taxing power of the Government is limited only by the Constitution, and in the exercise of that power that which is exempt from tax or duty to-day may be made taxable or dutiable to-morrow if Congress so wills it. The act of August 5, 1909, expressly repealed all acts and parts of acts inconsistent with its provisions, and must be considered as substituting all previous tariff legislation except as therein otherwise specially provided. It makes all articles not included in the free list dutiable; it expressly levies a duty on cattle and horses, and in terms excludes from the free list American animals exported and returned. As the animals in question were imported after the act of August 5, 1909, went into effect, it would seem that they were subject to its provisions and not to those of the act of July 24, 1897, which was no longer in force. Section 483 of the latter act, under which they might at one time have been admitted free, lost its vitality and power on August 6, 1909, and the authority to galvanize it into life rests with the legislature and not with the courts, which clearly can not restore to it a force once possessed, but which Congress expressly declared it should no longer have.

This brings us to the consideration of the second point urged by counsel for the importer, namely, that paragraph 483 of the act of 1897, while it was in effect erected a valid contractual relation between the Government and the importer and imposed on the former an obligation which could not be impaired by any repeal or modification of the provision. In our opinion, the paragraph was nothing more than an exercise of the taxing power of the Government and had none of the indicia or essential characteristics of a contract. True, the courts *have* held that where for a consideration any citizen is exempted from the payment of future taxes or is required to pay a special tax in lieu of other taxes, provision for such exemption or special tax amounts to a contract between the citizen and the Government which can not be affected by subsequent legislation in conflict with its terms. It will be noted, however, that in all the decisions on this subject it has been held that no such exemption will hold good so as to restrict the taxing power of the Government unless it be coupled with a consideration or unless the contract has been finally and completely executed, in which case no consideration would be required to support it. (Farrington *v.* Tennessee, 95 U. S., 679; Bank of Commerce *v.* Tennessee, 161 U. S., 134.) In this case the exemption from duty of American animals exported from the United States and returned was not granted to the importer by reason of any consideration moving from him to the State, and consequently there

was no binding obligation on the part of the Government to refrain from subsequent legislation which would make them dutiable. As it is admitted that to bring the importer within the provisions of paragraph 483 importation of the animals was necessary, and as the animals were not imported during the life of the paragraph, the relations between Government and importer could scarcely be regarded by any court as those of parties to an executed contract.

The case of Campbell *v.* United States (107 U. S., 407), cited by appellant, has no application here. There the law permitting a drawback was in full force at the time the importer had fully complied with the conditions which entitled him to a return of the duties paid. Here the law under which the importer claims had been repealed at the time he sought to avail himself of its provisions. There the importer paid his money to the Government on the statutory promise that it would be returned when he had complied with certain conditions. Here nothing passed from the importer to the Government, and consequently consideration, one of the essentials to convert an exercise of the taxing power into a contractual obligation, is wanting. There the transaction partook of the nature of a deposit for security, differing in no material way from other deposits made with the Government and which it binds itself to return on compliance with the conditions prescribed by its laws. Here there was nothing more than the withdrawal of a mere exemption secured to the importer by no consideration and wholly dependent for its continuance on the public interest as Congress saw it.

As to whether section 500 should be so construed as to obviate the infliction of hardship on the importer we can only suggest that mere hardship or even injustice of and by itself is not enough to justify an interpretation which, while avoiding the hardship or injustice, would violate the plain intent of Congress. The Legislature expressly excluded American animals from the benefit of paragraph 500 in language admitting of no doubt as to the intention of the lawmaker, and under such circumstances any change in that language which would bring about a different result from that which its plain meaning imports would be judicial legislation.

We are of the opinion that whatever rights the importer had under the act of July 24, 1897, were terminated by the act of August 5, 1909; that no contractual relation existed between the Government of the United States and the importer, and that the language of Congress excluding returned American animals from the free list is so clear and explicit as to leave no doubt that the law fully intended to subject them to duty.

The decision of the Board of General Appraisers is therefore *affirmed*.