UNITED STATES *v.* MARQUARDT & Co. (No. 1499).[1]

1. "COUNTRY" IN STATUTES AND TREASURY REGULATIONS.

    A long-continued uniform departmental practice of both State and Treasury Departments, now reviewed, shows the word "country" to have been interpreted to mean the locality and not the political domain itself.

---

[1] Reported in T. D. 35435 (28 Treas. Dec., 837).

2. CERTIFICATION OF INVOICE BY BRITISH VICE CONSUL.

The collector at the port of New York rejected a proffered invoice and entry as not duly certified. The invoice was certified by the British vice consul at Laguna, Mexico, this certificate containing the statement that there was no American consular office within that district. The invoice as presented to the collector was duly certified under the laws and regulations. It was the collector's duty to receive it, and failing to do this no valid appraisement could be had. All proceedings as to exacting bond and otherwise after such failure were accordingly invalid.

United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7651 (T. D. 34999).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, on the brief), for the United States.

*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the Court:

H. Marquardt & Co. (Inc.), in May, 1913, imported at the port of New York certain crude heron feathers from Laguna, Mexico. Upon arrival they presented to the collector of customs at that port a certified invoice, hereinafter described, showing a dutiable value aggregating $1,065, together with an entry reducing said valuation to $612. The collector rejected the proffered invoice and entry upon the grounds that the invoice had not been duly certified. The invoice was certified by the British vice consul at Laguna and the statement made in his certificate that there was no American consular office within that district. Thereupon the importers presented a pro forma invoice for $612 and entry accordingly. This pro forma invoice and entry were received and appraisement had at the pro forma invoice and entered value. Liquidation accordingly followed. As a condition, however, of receiving pro forma invoices the collector had previously in due course exacted of the importers the customary term bond in usual form covering all such cases to produce consular invoices, which was at the time in full force and effect. Among other provisions of this bond, and in addition to the stipulation to produce a duly certified invoice, is found the provision requiring that the importers "shall pay to the said collector the amount of duty to which it shall appear by such invoice the said goods, wares, and merchandise are subject over and above the amount of duties estimated on the appraisal of such goods, wares, and merchandise." Within the life of the bond the importers presented the invoice previously tendered the collector and asked that the bond be canceled as to that invoice, claiming that the production thereof satisfied the bond. The collector received such and duly canceled the bond accordingly, and in compliance with the written request made at the same time the collector placed the port of Laguna, Republic of Mexico, on the

no-consul list. Due protest was made by the importers asking for a refund of the difference between $612 and $1,065.

The Board of General Appraisers sustained the protest, and the Government appeals. The board was not in accord upon the reasons prompting the relief afforded. The learned general appraiser writing the prevailing opinion held, first, that under section 2844 of the Revised Statutes of the United States and article 190 of the Customs Regulations of 1908, all of which will hereafter be quoted, the invoice was not properly certified; and, secondly, that the stipulation of the bond to pay the amount of duty indicated by the certified invoice when produced was unreasonable and unlawful in that it was not supported or authorized by any provision of law. The concurring general appraiser placed his concurrence upon the second ground alone. The dissenting general appraiser challenges both grounds.

The importers filed no brief in this court, but were represented by counsel at the oral hearing.

In our view of the case the question whether or not the provision quoted on the bond was unauthorized by law and therefore invalid does not become an issue. We think that the invoice originally presented to the collector was duly certified under the laws and regulations; that it was incumbent upon the collector to receive the same; that not having so done, valid appraisement was not had and all proceedings after such failure not being in accordance with the statute were without authority of law, and, therefore, invalid.

The case is one which necessarily involves, by reason of the peculiar status of the statutes and regulations pertaining thereto, a review of the legislative and departmental history of the subject matter. Section 2844 of the Revised Statutes of the United States originated as a proviso to section 7 of the customs administrative law of March 1, 1823 (3 Stat., 733), the initial codified customs administrative act of this Government. Sections 7, 8, 10, 11, and 12 thereof defined the foreign requirements of the certificates to invoices. Section 7 was a typical provision. It will be noted that under that administrative act it was required that the invoice should be verified before a prescribed officer authorized to administer oaths. This verification was in the nature of a certificate certifying certain facts according to the character of and as shown in the invoice. In addition to this an authentication was required. The precise requirements are set forth in section 7, and are expressly referred to by the other provisions of the act. For exact definition of these requirements we quote section 7:

SEC. 7. *And be it further enacted,* That no goods, wares, or merchandise, subject to ad valorem duty, imported as aforesaid, and belonging to a person or persons not residing at the time in the United States, and who shall have actually purchased

the same, shall be admitted to entry, unless the invoice be *verified by the oath* of the owner, or one of the owners, *certifying* that the said goods, wares, or merchandise were actually purchased for his account, or for account of himself and partners in the said purchase; that the invoice annexed thereto contains a true and faithful account of the actual cost thereof, and of all charges thereon, and that no discounts, bounties, or drawbacks are contained in the said invoice, but such as have been actually allowed on the same; *which said oath shall be administered* by a consul or commercial agent of the United States, or by some public officer duly authorized to administer oaths *in the country where the said goods, wares, or merchandise* shall have been *purchased, and the same duly certified by the said consul, commercial agent, or public officer;* in which latter case such official certificate shall be *authenticated* by a consul or commercial agent of the United States: *Provided,* That if there be no consul or commercial agent of the United States in the country from which the said goods, wares, or merchandise shall have been imported, the *authentication* hereby required shall be executed by a consul of a nation at the time in amity with the United States, if there be such residing there; and if there be no such consul in the country, the said authentication shall be made by two respectable merchants, if any such there be, residing in the port from which the said goods, wares, or merchandise shall have been imported.

It will be noted that the verifying oath could be administered by a consul or commercial agent of the United States or other public officer duly authorized to administer oaths in the country of exportation. Likewise the invoice must have been duly certified by said consul, commercial agent of the United States, or public officer, but in case that the invoice was certified by an official other than a consul or commercial agent of the United States it must in that case have been by such consul or commercial agent authenticated. It was only when the invoice was verified before a public officer other than a consul or commercial agent of the United States that authentication was required. This authentication, of course, was not an authentication of any of the facts set forth in the invoice, for those facts were certified to by the certifying official as well as the declarant, but the authentication was of the official character of the officer other than a consul or commercial agent of the United States who might administer the oath. Then followed the proviso, now section 2844 of the Revised Statutes of the United States. In such a provision there may have been some reason for construing the word "country" as inclusive of all the governmental jurisdiction. The authentication being confined to the official character of a public official, a matter of record may more easily be known to another official resident at a distance, and in any event could more readily be certified to than the truthfulness of the contents of an invoice or the market value of goods in a locality many miles away.

The act of July 14, 1862 (sec. 17), provided:

Sec. 17. *And be it further enacted,* That * * * no goods, wares, or merchandise * * * shall be admitted to entry, unless the invoice of such goods, wares, or merchandise be verified by the oath of the owner or one of the owners, or in the absence of the owner, one of the party who is authorized by the owner to make the ship-

ment and sign the invoice of the same, *certifying* that the invoice annexed contains a true and faithful account   *   *   *   *whic*h said oath shall be administered by the consul* or commercial agent of the United States in the district where the goods are manufactured, or from which they are sent; and if there be no consul or commercial agent of the United States in the said district, the verification hereby required shall be made by the consul or *commercial agent of the United States at the nearest point, or at the port from which the goods are shipped,* in which case the oath shall be administered by some public officer, duly authorized to administer oaths, and transmitted with a copy of the invoice to the consul or commercial agent for his *authentication;* and this act shall be construed only to modify, and not repeal, the act of March first, eighteen hundred and twenty-three, entitled "An act supplementary to, and to amend an act entitled 'An act to regulate the collection of duties on imports and tonnage,' passed second March, one thousand seven hundred and ninety-nine, and for other purposes," and the forms of the oaths therein set forth shall be modified accordingly.   *   *   *   *And provided, further,* That the provisions of this section shall not apply to countries where there is no consul, vice-consul, or commercial agent of the United States.

The act of 1862 amended the act of 1823 in that certification was authorized in the consular district "where the goods are manufactured, *or* from which they are sent" instead of "in the country where the said goods   *   *   *   shall have been purchased."

The succeeding act of March 3, 1863 (12 Stat., 737, *et seq.*), read:

*   *   *   And said invoices shall, at or before the shipment thereof, be *produced to* the consul, vice consul, or commercial agent of the United States *nearest the place of shipment* for the use of the United States, and shall have indorsed thereon, when so produced, *a declaration signed* by said purchaser, manufacturer, owner, or agent, setting forth that said invoice is in all respects true; that it contains   *   *   *.   And the person so *producing said invoice* shall at the same time *declare to said consul,* vice consul, or commercial agent the port in the United States   *   *   *; whereupon the said consul, vice consul, or commercial agent shall indorse upon each of said triplicates *a certificate,* under his hand and official seal, stating that said invoice has been produced to him,   *   *   *.   And thereupon the said consul, vice consul, or commercial agent shall deliver to the person producing the same one of said triplicates,   *   *   *.   And no goods   *   *   *   shall be admitted to an entry unless the invoice presented shall in all respects conform to the requirements hereinbefore mentioned, and shall have thereon *the certificate* of the consul, vice consul, or commercial agent hereinbefore specified, nor unless said invoice be verified at the time of making such entry by the oath or affirmation of the owner or consignee, or the authorized agent of the owner or consignee thereof, certifying that the said invoice *and the declaration thereon* are in all respects true,   *   *   *: *And provided further,* That the provisions of this act shall not apply to countries where there is no consul, vice consul, or commercial agent of the United States   *   *   *.

Upon the codification of the statutes of the United States by the Revised Statutes of the United States, effective the first day of December, 1873, revised, consolidated, and approved the second day of March, 1877, the existing law upon the subject hereinbefore recited was amended and paragraphed as typified by sections 2843, 2844, and 2859 here in question.

Sec. 2843. No merchandise subject to ad valorem duty belonging to a person not residing at the time in the United States, and who shall have actually purchased the same, shall be admitted to entry, unless the invoice is *verified* by the oath of the owners

or one of the owners, *certifying* that the merchandise was actually purchased for his account, or for account of himself and partners in the purchase; that the invoice annexed thereto contains a true and faithful account of the actual cost thereof, and of all charges thereon, and that no discounts, bounties, or drawbacks, are contained in the invoice, but such as have been actually allowed on the same.  Such *oath shall be administered* by a consul or commercial agent of the United States, or by some public officer duly authorized to administer oaths *in the country where the merchandise was purchased; and* the same *shall be duly certified* by the consul, commercial agent, or public officer; and when such oath is administered by an officer other than a consul or commercial agent of the United States, *such official certificate shall be authenticated* by *such* a consul or commercial agent.

SEC. 2844. If there is no consul or commercial agent of the United States in the country from which such merchandise was imported, the *authentication* required by the preceding section shall be executed by a consul of a nation at the time in amity with the United States, if there is any such residing there; and if there is no such consul in the country the authentication shall be made by two respectable merchants, if any there be, residing in the port from which the merchandise shall have been imported.

SEC. 2859. The six preceding sections shall not apply to countries where there is no consul, vice consul, or commercial agent of the United States.  * * *

The act of June 10, 1890, assumed to be a codification of all existing administrative laws, expressly repealing some but continuing in full force and effect all acts and parts of acts not thereby expressly repealed, aside from reciting the contents of invoices and certificates thereupon, enacted:

SEC. 3. That all such invoices shall, at or before the shipment of the merchandise, be *produced to* the consul, vice consul, or commercial agent of the United States *of the consular district in which the merchandise was manufactured or purchased,* as the case may be, for export to the United States, and shall have indorsed thereon, when so produced, *a declaration* signed by the purchaser, manufacturer, owner, or agent, setting forth that the invoice is in all respects correct and true, and *was made at the place from which the merchandise is to be exported* to the United States; that it contains * * *.

SEC. 4. That, * * * no importation of any merchandise * * * shall be admitted to entry without the production of a duly certified invoice thereof as required by law, * * *.

SEC. 8. That when merchandise * * * has been consigned * * * such person * * * shall * * * present to the collector * * * in addition to the certified invoice * * * a statement * * *: *Provided,* That the statements required by this section * * * shall bear the attestation of the consular officer of the United States resident within the consular district wherein the merchandise was manufactured, if consigned by the manufacturer or for his account, or from whence it was imported when consigned by a person other than the manufacturer * * *.

Section 29 of said act was the repealing section, and thereby section 2843 of the Revised Statutes was expressly repealed, as follows:

SEC. 29. That sections * * * twenty-eight hundred and forty-three * * * of the Revised Statutes of the United States be, and the same are hereby, repealed * * *, and all other acts and parts of acts inconsistent with the provisions of this act are hereby repealed, but the repeal of existing laws or modifications thereof

embraced in this act shall not affect any act done, or any right accruing or accrued, * * * but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modification had not been made. * * *

The acts of July 24, 1897, and August 5, 1909, reenacted these provisions *in hæc verba.*

It will next be noticed that section 2844 of the Revised Statutes, relied upon by the Board of General Appraisers in this case as an authority for holding that the certification of these invoices was invalid, expressly refers its only application to "the *authentication* required by the preceding section" (2843), which was as to the official character of the officer administering the oath. But section 2843 was expressly repealed and the repealing and existing statutes nowhere require or authorize such or any *authentication.*

It is permissible in construing a law composed of several sections of which one or more may have been expressly repealed to refer thereto to understand the remaining sections. Hamilton *v.* Rathbone (175 U. S., 414).

When a revising statute covers the whole subject matter of antecedent statutes, the revising statute virtually repeals the antecedent enactment, unless there is something in the nature of the subject matter or the revising statute to indicate a contrary intention. Kohlsaat *v.* Murphy (96 U. S., 153–158); Daviess *et al. v.* Fairbairn *et al.* (3 How., 44 U. S., 636).

It is uniformly held that where a law *in pari materia* consisting of several sections is expressly repealed without naming a part, it is deemed a legislative oversight, and is held that it was the intention of the legislative body to repeal all. Beals *v.* Hale (4 How., 45 U. S., 37); Mayor, etc., of New York *v.* Broadway, etc., R. R. Co. (12 Hun., N. Y., 571); Prince George's County Commissioners *v.* Laurel (51 Md., 457); S. P. State *v.* Barrow (30 La. Ann., pt. 1, 657).

Where, however, the subject matter of each is independent and can be given full force and effect without depending upon the other sections for a part of the substantive law being enforced such would not follow, but an independent effect given. Hamilton *v.* Rathbone (175 U. S., 414).

Without deciding, however, whether or not R. S. 2844 has been repealed by subsequent enactments, but expressly reserving that point, we think it clear that it is here inapplicable in that there is no other existing statute upon which it can operate by its related terms. Referring to the repealed section 2843 for the exemplification of what is meant by "authentication" we find that the authentication referred to in section 2844 was not an authentication of the invoice, or of any certificate to an invoice, or of the contents of an invoice, but, as that section was worded, referred to an authentication of the official character of any other official than a consul or commercial

agent of the United States who may have administered the oath verifying the certificate to an invoice. It is, therefore, if unrepealed, in this case in no sense applicable. The statutory requirement in that view is, these importations being consigned, as set forth in subsection 8 of section 28 of the tariff act of 1909, *supra*, requiring only certification of the invoice and attestation of the declaration by "the consular officer of the United States resident within the consular district." It being also certified that there was no such officer in that district the certification and attestation were in due form made by the British vice consul for the district. We are here confronted with the inquiry, If R. S. 2844 is repealed or inapplicable what was the authority for this action by the British vice consul? Obviously a case is presented when there is no consular officer in the district which is not provided for by statute and for that reason the proper subject of regulations under R. S. 251 providing:

SEC. 251. The Secretary of the Treasury shall make and issue from time to time such * * * rules and regulations, not inconsistent with law, to be used under and in the execution and enforcement of the various provisions of * * * or in carrying out the provisions of law relating to raising revenue from imports, or to duties on imports, * * *.

The statutory requirement being that the invoice must be presented to or verified by the consul or officer within the consular district, such is not contravened in any sense by a Treasury regulation that where there is no such consular officer within the consular district or the country the duty may be performed by another official. In this respect the Treasury regulations have recited (Treasury Regulations of 1857):

204. (Prescribed forms of certification.)

205. If there be no consul or commercial agent of the United States in the country from which the merchandise shall have been imported, the authentication must be executed by a consul of a nation at the time in amity with the United States. If there be no such consul, the authentication must be made by two respectable merchants, if any such there be, residing at the port from which the merchandise shall have been imported.

The next Treasury regulations were issued in 1874, and following the act of March 3, 1863, there appear two pertinent articles, as follows:

328. All invoices must be verified by the declaration of the person signing them as above indicated and the certificate of the United States consul, vice consul, or commercial agent *nearest the place of shipment* for the United States indorsed on or attached by tape and seal to each of the copies, according to the following forms * * *.

329. If there be no such consul or commercial agent of the United States in the country from which the merchandise is to be exported, the authentication must be executed by a consul of a nation at the time in amity with the United States.

If there be no such consul, the authentication must be made by two respectable merchants, if any such there be, residing at the port from which the merchandise is exported to the United States.

The next ensuing regulations, those of 1884, followed the Revised Statutes, and two pertinent articles appear, to wit:

318. All invoices must be verified by the declaration of the person signing them as above indicated, and the certificate of the United States consul, vice consul, or commercial agent *nearest the place of shipment* for the United States indorsed on or attached by tape and seal to each of the copies according to the following forms  *  *  *.

319. If there be no consul or commercial agent of the United States in the country from which the merchandise is to be exported, the authentication must be executed by a consul of a nation at the time in amity with the United States.

If there be no such consul, the authentication must be made by two respectable merchants, if any such there be, residing at the port from which the merchandise is exported to the United States.   R. S. 2844 and 2859.

The regulations of 1892 in this particular complied with the customs administrative act of June 10, 1890, in the following articles:

287. All such invoices shall, at or before the shipment of the merchandise, be produced to the consul, vice consul, or commercial agent of the United States of the consular district in which the merchandise was manufactured or purchased, as the case may be, for export to the United States, and shall have indorsed thereon, when so produced, a declaration signed by the purchaser, manufacturer, owner, or agent, setting forth that the invoice is in all respects correct and true, and was made at the place from which the merchandise is to be exported to the United States; that it contains  *  *  *.

291. If there be no consul or commercial agent of the United States in the country from which the merchandise is to be exported, the *authentication* may be executed by a consul of a friendly nation.   In the absence of such officer, authentication may be made by two reputable merchants residing at the place.

The Treasury Regulations of 1899, articles 396 and 401, were identical with those of 1892, as were those of 1908, articles 184 and 190, with the additional article 188, as follows:

188. *Consular attestation of statements—Disposition.*—The statements required shall be made in triplicate, and shall bear the attestation of the consular officer of the United States resident within the consular district wherein the merchandise was manufactured, if consigned by the manufacturer or for his account, or from whence it was imported when consigned by a person other than the manufacturer, one copy thereof to be delivered to the person making the statement, one copy to be transmitted with the triplicate invoice of the merchandise to the collector of the port in the United States to which the merchandise is consigned, and the remaining copy to be filed in the consulate.   The statement of cost of production will be required only when necessary for the ascertainment of dutiable value of the goods.

Apparently the regulation authorizing the consul of a friendly nation to make the "authentication" when there was no consular agent of the United States in that "country" being in the words of section 2844, Revised Statutes and its predecessor statutes, was drafted and originally intended to cover only such cases.   But this regulation, and, if not repealed, R. S. 2844, have for a long period of time been construed to apply not to the authentication of official title and action, no longer required by the statutes, but to the certification of the invoice and declaration.   The regulation depending solely for its validity upon section 251, Revised Statutes, and its

due promulgation, such construction, if not an amendment thereof, is of controlling force.

The contemporaneous article in all the Treasury regulations from and including 1874 to date, providing that invoices should be consulated by the consular agent "nearest the place of shipment for the United States" would be in necessary conflict with the articles requiring in certain cases consulation "in the country from which the merchandise is to be exported," unless we read "country" to mean locality and not political division. Patently wherever it occurred that the consular agent "nearest the place of shipment" was, as often did occur, across the line in another country, unless "country" means locality, these articles are in irreconcilable conflict. That construction was placed upon these articles by the Treasury Department as early as 1874 and has continued throughout the following decades. (T. D. 2750, T. D. 3059, T. D. 4177, T. D. 4454, T. D. 14954, T. D. 27176.) The continued and repeated promulgation of the two articles, together with the continued uniform ruling of the department as to their application, is a departmental construction of great force and entitled to much weight in interpreting the intended use therein of the word "country."

In many instances the department ruled that invoices could be consulated by others than United States consular officers where there were such officers in the country of exportation, but not in the locality, thereby construing and amending these several regulations accordingly. (T. D. 16457.) The matter received direct consideration in T. D. 20302, the department stating:

> I have to state that a strict interpretation of the law would exclude the acceptance of invoices so authenticated for importations from Ontario, as several United States consular officers (46 at least) are stationed in that country, but, with a view of avoiding hardships to shippers, this department has been disposed to construe said section in a liberal manner, and has authorized the acceptance of such invoices in cases where the production of consular invoices in unfrequented, unsettled portions of a country would involve expense, and the Secretary of State has expressed the opinion that the word "country," as used in the law, should be construed to mean not an entire political subdivision of the world, but the vicinity, consular district, or surrounding country which exports merchandise from the port at which the consular officer is located, and that the consular regulations should be construed liberally where a narrow construction would hinder trade and cause delay to the shippers. The law, however, can not be construed as to cover cases of shipments from a district represented by a United States consular officer who can be reached easily by mail, and department's decision aforesaid can not be accepted as a general rule in such cases. Each case must be determined by the surrounding circumstances, * * *.

The regulations having been made by the Treasury Department which thereafter declared they "should be construed liberally where a narrow construction would hinder trade and cause delay to the shippers," this record certainly presents a case well within the department's rule.

By section 1752, Revised Statutes (act of August 18, 1856), it is provided:

Sec. 1752. The President is authorized to prescribe such regulations, and make and issue such orders and instructions, not inconsistent with the Constitution or any law of the United States, in relation to the duties of all diplomatic and consular officers, the transaction of their business, * * *.

In the matter of the certification of invoices the consular regulations frequently state a well known fact, as follows: "The instructions in this article have been carefully revised by the Treasury Department; and have the sanction of the Secretary of the Treasury." Consular Regulations, 1881 (art. 636); Consular Regulations, 1888 (art. 636). The change, however, in the pertinent requirements between the Revised Statutes, sections 2843 and 2844, as amended by the customs administrative act of June 10, 1890, was more precisely noted than in the Treasury regulations, *supra*. See article 655, Consular Regulations, 1881 and 1888.

The same requirements of certification at the nearest point of shipment have been maintained from their earliest issue to date. Consular Regulations, 1868 (art. 745, and page 429), 1870 (art. 879), 1874 (art. 462), 1881 (art. 637), 1888 (art. 637), to "the consular officer of the United States for the consular district in which the merchandise was manufactured or purchased." Consular Regulations, 1896 (art. 668). These regulations obtained all through the life of the acts of 1862, 1863, and Revised Statutes 2843 and 2844, and are for the reasons stated significant as departmental constructions of the word "country" wherever therein used.

While the confused use of the words "authentication" and "certification" obtains in the consular regulations (1881 and 1888), following the Revised Statutes (see articles 637, 638, 639, 640, 641, 642, 643, regulations 1881; and 637, 639, 641, 642, 643, 645, 646, regulations, 1888), that use was observed and corrected by an explanatory article (655) in each of said regulations.

655. This declaration on the part of the owner, manufacturer, purchaser, or agent, whether under oath or not, is the verification of the invoice before shipment recognized and prescribed by the statutes, and must not be confounded with consular authentication. In cases where the party making the declaration resides at a remote distance from the consulate where the invoice is to be authenticated, *the declaration may be made before any other consul.* This is not, however, to be understood as superseding the existing practice of requiring the personal presence of the party making the declaration before the consul authenticating the invoice except in the cases mentioned, nor as changing the rule that invoices *must be authenticated by the consular officer nearest the place of shipment.* What consular officer shall certify goods transported to, and imported from, intermediate ports in other countries, depends upon the fact of the original destination of the goods, as shown by the original invoices thereof, or other primary evidence.

Clearly this article did not read R. S. 2843 and R. S. 2844 then unrepealed to use "country" in the sense of political domain, but locality.

The only instance observed in all the consular regulations confining either certification or authentication within the limits of political domain related to certification in articles 638, regulations 1881, requiring:

638. * * * In all such cases, however, both the place of consular certification and place of actual shipment must be within the limits of the same country or political domain.

This provision, however, was dropped in the regulations of 1888, and a comparison of the various articles shows, with the explanation had in article 655, a necessarily implied interpretation of the word "country" as used in Revised Statutes 2844 before the repeal of Revised Statutes 2843, to mean locality and not political domain.

After the enactment of the customs administrative law of June 10, 1890, the consular regulations of 1896 were promulgated, evidently revised in accord with the wording of the existing statutes. Various provisions are made for meeting requirements that the invoice must be consulated in the consular district wherein the goods are manufactured or purchased, etc. See articles 668, 674, 677, and 678. No requirement for "authentication" is had, but the possible emergencies of the inapplicability of the statute noted is provided for by article 679.

679. *Certification when no consul of United States.*—If there is no consular officer of the United States in the country from which the merchandise is imported, the *certification* required should be executed by a consul of a nation at the time in amity with the United States, if there is any such residing there; and if there is no such consul in the country, the *certification* should be made by two respectable merchants, if any there be, residing in the port from which the merchandise is imported. (Revised Statutes, sec. 2844.)

In this codification, presently and when these importations were made in full force and effect, we again encounter numerous provisions where the certification, the only official act required as to invoices since the act of June 10, 1890, can not always and frequently is not and can not be done in "the country from which the merchandise is imported" and "in the consular district wherein the goods were manufactured or purchased" unless the word "country" is interpreted to mean locality and not political domain.

The consular regulations relating to imports and customs regulations are, as shown therein, conformed to and by the Treasury decisions upon that subject. Accordingly we find a long-continued uniform departmental practice of both the State and Treasury Departments interpreting the word "country," as herein used in both statutes and regulations, as meaning locality and not political domain. We feel constrained by this long-continued practice to so read the regulations and hold the invoice herein to have been duly consulated.

For these reasons, being of the opinion that this invoice was duly and regularly certified, it was the duty of the collector upon original

tender thereof with entry to receive the same. Having refused to receive the same, due tender thereof having been made, the legal effect upon the rights of the importers is the same as if it had been duly received by the collector. It is undisputed in the testimony that this invoice with entry-making deductions, as authorized by the then existing statutes, was tendered to and rejected by the collector. The subject was discussed in the United States Circuit Court of Appeals for the Second Circuit in United States *v.* Legg (105 Fed., 930). We quote with approval from the decision:

> If the importer was, under the statutes, entitled to make the entry required from him by section 2785 when he so presented himself, and to pay his debt for duties * * * the collector could not deprive him of his right to do all section 2785 required of him by any arbitrary refusal to receive or file his papers. Campbell *v.* United States (107 U. S., 407; 2 Sup. Ct., 759, 27 L. Ed., 592). Having himself done all that the law required of him, all rights secured by such compliance with statutory requirements are saved by the clause of section 34 referred to at the outset of this opinion. The case may be treated, then, as if the collector had received the documents presented by the importer prior to 4 p. m. on July 24th.

We must proceed, therefore, in accordance with these well-settled principles upon the theory that and as if the invoice and entry tendered were before the collector when he demanded the pro forma invoice and exacted of the importers the bond in question. It is obvious in that situation that at the time of appraisement the appraiser did not have before him, as the importers were entitled under the statute he should, either the certified invoice in question or the entry, which were in the theory of the law in the possession of the collector and which it was the duty of the collector under the statute to deliver to the appraising officer. The appraisement, therefore, was illegal. Stein *v.* United States (1 Ct. Cust. Appls., 36; T. D. 31007) and Stein *v.* United States (1 Ct. Cust. Appls., 478; T. D. 31525). It is equally clear that the liquidation by the collector and the reliquidation which followed the appraisement, by liquidating an entry based upon an invoice neither of which were legally in the case, and a reliquidation not having been based upon the certified invoice *and the entry tendered therewith* was equally invalid and void. In this view of the case it becomes unnecessary to consider whether or not the bond in question was valid or invalid. The liquidation and the reliquidation both being invalid, for the reason that the collector had not complied with the requirements of the law preceding the same, it follows that reliquidation must now be had upon the basis of the certified invoice and entry tendered by the importers which is in the contemplation of the law before the collector. Stein *v.* United States (1 Ct. Cust. Appls., 478; T. D. 31525). The decision of the Board of General Appraisers is, therefore, affirmed and a reliquidation ordered in accordance herewith.

*Affirmed.*